Wheeler *v.* Nichols.

WHEELER *& als. versus* NICHOLS.

A mortgage of personal property, made to a number of persons to secure them against their liabilities, as indorsers for the mortgager, is not invalidated by the fact that no *two* of the mortgagees were liable upon any *one* paper.

Should any trespass be committed upon the rights derived under the mortgage, the action for redress may be brought jointly by all the mortgagees.

The owner of personal property, attached upon a writ against him, and actually retained by the officer or his bailee, may transfer his interest therein either absolutely or in mortgage, subject to the attachment-lien.

When such a mortgage has been made, and the bailee of the attaching officer, while the custody of the goods is in him, consents to hold the goods as servant of the *mortgagee*, and actually holds for *him*, there is such a taking of delivery and retaining of possession by the mortgagee as to make it unnecessary that the mortgage should be recorded, although the value of the property exceeds thirty dollars.

It is not legally inconsistent that the same bailee should act to keep possession, both for the attaching officer and for a purchaser under the owner.

In such a concurrent possession by the same bailee, the priority of legal rights would obtain.

Though a debt, for which property has been attached, may have been paid and the attachment thereby discharged, yet the attaching officer cannot be charged as a wrongdoer for retaining the possession, until satisfactory evidence be given him, that the attachment has been vacated.

If, by reason of an attachment of personal property, a purchaser of it from the debtor cannot receive an *actual* possession, a *symbolical* delivery of it will be sufficient.

Wheeler v. Nichols.

Trespass against the sheriff for taking and selling, upon *mesne* process, certain goods which the plaintiffs claim to hold under a mortgage from the debtors in said suit.

The evidence was submitted to the court, with power to draw inferences as a jury might.

It was shown that the attachment was made on the 2d of July, 1847, upon a writ in favor of Charles Tappan, and that the property was placed for safe keeping in the hands of one Clapp, as bailee to the attaching officer. The mortgage was made on the 10th of the same July. The value of the property exceeded thirty dollars. Whether the doings of the town clerk on the 13th of July constituted a valid recording of the mortgage, was a question much discussed. But by the adjudication of the court upon the facts proved by the evidence, that question became immaterial. Clapp continued in possession until the morning of the 14th of July. Whether from that time forward he became the keeper for the *mortgagees* or continued as keeper for the attaching officer only, was another question strenuously controverted.

In the afternoon of said 14th of July, the officer returned an attachment of the goods on a writ in favor of the Canal Bank, and subsequently upon a number of other writs, but all subject to Tappan's attachment.

On the 5th of August, Clapp surrendered the custody of the goods to the officer, induced by his threats to take forcible possession, and by a contract of indemnity given by the officer and by the attorney of the Canal Bank.

On the 18th of August the debt due to Tappan was paid by the mortgagees. By consent of the Canal Bank and other subsequently attaching creditors, and also of said debtors, the property was sold at auction by the officer on the 8th of September, 1847.

This suit is brought by the three mortgagees. The condition of the mortgage was, in substance, that whereas said mortgagees had at various times indorsed for the mortgagers certain and various notes, drafts and checks, the mortgage

conveyance was to be void, if the mortgagers should protect the mortgagees against the said indorsements.

It turned out, in fact, that each of the mortgagees was indorser upon some of the mortgagers' paper, but no two of them were upon any one piece of such paper.

The defendants contended, thereupon, that the mortgage was not a security for any but joint liabilities, and that the action, being in the name of the mortgagees jointly, cannot be sustained.

A more detailed exhibit of the facts is contained in the opinion.

*Hayden*, for the plaintiffs.

*J. Granger*, for the defendant.

TENNEY, J. — This action is trespass against the sheriff of the county of Washington for the alleged taking of certain goods from the possession of the plaintiffs. In two of the counts, the defendant is charged with having taken the goods himself, and in two others, it is alleged that they were taken by one James Nutt, his deputy. The defendant justifies the taking of the goods by his deputy upon the ground, that the same were the property of C. and J. S. Bedlow, against whom he had certain writs; one of them was in favor of Charles Tappan, upon which he attached the goods on July 2, 1847; another was in favor of the Canal Bank on which he returned an attachment of the same goods on July 14, 1847, and there were several other writs on which the goods were attached subsequently to the 14th of July and previous to Aug. 1, 1847.

The right of the plaintiffs is derived from a certain mortgage of the property in question, given by C. & J. S. Bedlow on July 10, 1847, to them, and certain acts, which were done by and for them by virtue of the same. The evidence shows that each of the plaintiffs had severally indorsed certain paper for the mortgagers, but it did not appear that they had assumed any joint liability for them. It is stated in the condition of

the mortgage, that the "said Wheeler, Deming and Horton have at various times indorsed for the said C. and J. S. Bedlow, certain and various notes of hand and drafts, checks, &c. made and drawn at various times during the past six months. Now if the said C. and J. S. Bedlow, shall well and truly pay or cause to be paid all such notes of hand, drafts, checks, &c., where the said Wheeler, Deming and Horton are holden as security, and shall release them from all liability occasioned by their indorsing said notes, drafts and checks, then this conveyance shall be void, otherwise shall remain in full force and virtue."

It is contended by the defendant, that from the terms of the condition in the mortgage, the plaintiffs could have no claim upon the goods, excepting as an indemnity for joint liabilities. In giving a construction to the mortgage, the design of the parties thereto must be sought. In this inquiry the subject-matter to which it refers, and the situation of the parties may be taken into consideration. *Cummings* v. *Dennett*, 26 Maine, 397. The parties had a purpose in its execution; neither is presumed to have intended a void instrument. It not appearing, that the mortgagees had assumed any joint liability during a period of six months, immediately preceding the date of the mortgage, it cannot be restricted in its construction to any such liability. When it recites, that Wheeler, Deming and Horton had indorsed certain and various notes, &c., it does not necessarily mean, that all of them have indorsed each note, draft or check, but that their names are on notes, drafts and checks, drawn by the mortgager. The terms "certain and various notes of hand, drafts and checks," are used collectively and it was intended to be said, that upon them, taken collectively, were the indorsements of each and all of the mortgagees. The mortgage was to be void, if the mortgagers should pay or cause to be paid *such* notes, drafts and checks as those previously referred to, where the names of the plaintiffs were to be found. It cannot be doubted that it was the object of the parties to secure the mortgagees for all their liabilities as indorsers for them, assumed during the preceding

Wheeler *v.* Nichols.

six months, whether the indorsements were several or joint, or whether the names of all were upon the same piece of paper, or not.

Such being the construction of the instrument, the action for any trespass upon their rights derived from it, under the evidence disclosed, should be in the names of the mortgagees jointly, the mortgage itself not being made to them severally.

The deed introduced by the plaintiffs is a mortgage for the security of a sum greater in amount than thirty dollars, and cannot be valid against the defendant, unless it appears from the evidence, that possession of the mortgaged property was delivered to and retained by them; or unless the mortgage was recorded by the clerk of the town, where the mortgagers resided. R. S. chap. 125, sect. 32. According to the construction given to section 32 of the same chapter, prescribing what shall be done to constitute a valid record, in *Handley* v. *Howe*, 22 Maine, 560, the mortgage was not so recorded as to be valid. But it is contended for the plaintiffs that they have brought themselves under the other provisions of the statute, which gives validity to the mortgage.

It is conceded, that Amasa L. Clapp was the keeper of the goods attached on the writ in favor of Charles Tappan against C. and J. S. Bedlow, employed by Nutt, the officer, who made the attachment, till the morning of the 14th of July, 1847. Whether he was the keeper under Nutt after that time and till August 5, 1847, is a question in dispute. He testifies that he abandoned the custody of the goods for the officer, and became the keeper under the plaintiffs, by virtue of the mortgage to them, dated July 10, 1847. Other evidence is relied upon to show, that his relations with Nutt were continued to the time, when he finally left the store in which the goods were situated.

It may not be material to settle this controverted question of fact, in order to determine, whether this action can be maintained or not. The evidence introduced on both sides, shows satisfactorily, that Clapp was in possession of the goods, from

the forenoon of the 14th day of July, till after all the attachments were attempted to be made by Nutt upon the property, as well at least for the mortgagees, as for the officer. In addition to the express testimony of Clapp, that he held possession exclusively for the plaintiffs, is the statement of Bradbury, the attorney of Tappan, that he went with Deming, one of the mortgagees, on the morning of July 14, 1847, and that he told Clapp that he was willing, that he should be the keeper of the goods for the plaintiffs, subject to the attachment; that Deming inquired of Clapp, if he would be the keeper for the plaintiffs subject to the attachment, and that he consented to be so for the sheriff and for them.

Walker, the partner of Bradbury, testifies, that no one of the mortgagees ever pretended, that Amasa L. Clapp was the keeper of the Bedlow stock of goods exclusively for them. The evidence from this witness, excepting so far as it shows that Clapp gave different accounts of some matters, from that contained in his deposition, is of a negative character. He was not present at the meeting at the store on July 14, between Deming, Bradbury and Clapp, when it appears from the testimony of the two last, that Clapp was to be keeper for the plaintiffs, and no fact known to him conflicts with their statements upon this point.

Nothing in the case shows, that any change took place in the possession of the goods after the forenoon of July 14th, till the time when Nutt took the key on August 5th. Whatever service Clapp undertook for the plaintiffs and entered upon, continued during that period. The indemnity, which he received from the officer, and the owner of the claim in the name of the Canal Bank, shows, that they understood, that he had possession of the goods, and that he asserted it in behalf of the plaintiffs prior to that time; if not exclusively for them, certainly for both them and the officer. That possession when it was undertaken for the plaintiffs was not against the permission of the officer; for it does not appear, that the officer had knowledge, that he took charge of the goods for them, at the time that he assumed the care.

It is quite evident, therefore, that Clapp either abandoned the custody of the property for the officer on July 14, and took them in charge under the mortgage to the plaintiffs; or that by the consent of the attorney of the creditor in whose suit they had been attached, he had the possession both for the officer, to preserve the attachment, and for the plaintiffs to make perfect their rights under the mortgage, subject to the attachment. Upon the latter hypothesis what were the rights of the plaintiffs?

It appears, that on the 5th of August, the keeper surrendered the custody of the goods, so far as he held it for the plaintiffs, induced by the threats of the officer to take forcible possession, and the indemnity given by him and Mr. Granger.

Do the facts of the case show that possession of the goods was taken and retained by the plaintiffs, within the meaning of the provision of the statute, previous to, and till the time, when Nutt made the attachment upon the writ in the name of the Canal Bank, which was 6 o'clock in the afternoon of July 14th? Whatever was done for protecting the plaintiffs, took place in its commencement on the forenoon of that day, so that if that attachment was invalid, the subsequent ones were equally so.

The mortgage was effectual between the parties thereto without a delivery of the property, and gave the right to the mortgagees to take possession of it, there being no agreement in the case, that the possession was to be retained by the mortgagers. It follows, that if the plaintiffs came to the lawful possession of the goods, though not by the agency of the mortgagers, their rights became as perfect as they would have been by a delivery from them. *Carrington* v. *Smith*, 8 Pick. 419.

In *Fettyplace* v. *Dutch*, 13 Pick. 388, it is said by the court, " an attachment must constitute a lien, and as the general property remains in the owner subject to such lien, if the general owner can without a trespass make an actual delivery of the property, subject to the lien created by the attachment, a sale with such delivery is lawful, and will vest the property

in the vendee, subject to such attachment, so as to give the vendee a prior title to that of the subsequent attaching creditors."

When an officer has the possession of goods attached for the purpose of maintaining a lien, they are not suffered to be so in the control of the debtor, that an actual delivery can be made, but a symbolical one is deemed to be sufficient; and it is so effectual, that upon such possession, replevin can be maintained. *Whipple* v. *Thayer,* 16 Pick. 25; *Mitchell* v. *Cunningham,* 29 Maine, 376.

When goods have been attached, and put into the charge of a keeper by the officer, and the keeper abandons the possession, the attachment is dissolved. *Carrington & al.* v. *Smith,* 8 Pick. 419; *Gower* v. *Stevens,* 19 Maine, 92; *Sanderson* v. *Edwards,* 16 Pick. 144.

If the attorney abandons the suit in which an attachment of property is made, the attachment is necessarily vacated. If he orders the officer to relinquish the attachment, it would be improper for the officer to refuse, unless he held it at that time by virtue of an attachment in favor of another. The officer is protected if he takes security of property attached by him, which is approved by the attorney, and releases the property. *Jenney* v. *Delesdernier,* 20 Maine, 183. Such being the control, which the creditor's attorney has over property attached, the possession of the keeper under the officer, in behalf of a purchaser or mortgagee, by the consent of the attorney of the attaching creditor, subject to the attachment, cannot be unlawful in the keeper, the purchaser, or the mortgagee. The possession of the one is not adverse to that of the other; the claim of the one is in submission to the other, and both are consistent. Such possession in nowise differs in principle from a case, where the same individual has possession of property for two mortgagees, where the right of one is subject to that of the other. As long as the keeper holds the property that the attachment may remain valid, the officer is not exposed to peril, and the attaching creditor's security is not diminished. Can it be doubted, that the keeper of goods

taken by an officer upon mesne · process, can receive a mortgage of the same from the owner, subject to the attachment, and can perfect his right under it, by retaining the possession for himself and at the same time for the officer ? If the keeper can thus acquire rights for himself, and preserve the attachment, it is clear, that another can acquire like rights through his agency. A mortgagee has the same power to retain possession of property attached and in the hands of a keeper, that he has to take it, so that he can maintain replevin therefor, if he retains it by the consent of the attaching creditor or his attorney, and the keeper becomes his agent for the purpose. If the keeper can dissolve the attachment, by an abandonment of the possession altogether, without the consent of the officer, and against his wishes and the wishes of the creditor, he certainly can take possession for another, who becomes interested after the attachment, when the possession for the latter is not designed to interfere with or injuriously affect the rights of the officer or the creditor.

Clapp having the possession of the property for the plaintiffs from the forenoon of the 14th day of July, to the time, when the defendant received the key from him, by the consent of the attorney of the attaching creditor, without interférence on the part of the officer, the mortgagees are to be regarded as having received the delivery of the possession of the property and retained it, till August 5, 1847 ; and they thereby acquired rights superior to those, who caused the property to be attached subsequent to the possession taken in behalf of the mortgagees.

On the 14th of July, after possession had been so taken and retained by the plaintiffs through their agent, the defendant returned the same goods as attached on the writ in the name of the Canal Bank, and subsequently on others, subject to the attachment on the writ in favor of Tappan. These last attachments could not have been effectual to deprive the plaintiffs of their rights as mortgagees, which had before become perfect. On the 5th of August, the defendant, and the owner

· of the demand in the name of the Canal Bank, knew that the plaintiffs claimed to have a mortgage of the same goods, and that Clapp represented himself possessed thereof for them ; they did not deny the existence of the mortgage, but disputed its validity.

The attorney of Tappan, not having intended to relinquish the attachment, so long as Clapp had possession for the officer, it remained good, unless it was void by being excessive, of which no opinion is given. On the assumption that the attachment of the officer upon the writ of Tappan was effectual, the officer was responsible for its continuance. He therefore, had the right to take the possession from Clapp, his bailee, at pleasure, and retain it exclusively for his own protection on account of his liability to Tappan ; he had the right to retain that possession, till he had satisfactory evidence, that Tappan's debt had been paid, or the attachment otherwise vacated. This debt was paid on August 18, 1847, and the attachment no longer existed, but the officer not having notice of it, could not be treated as a *direct* trespasser upon the possession of the property.

But the mortgage to the plaintiffs being effectual, the defendant had no right to hold the property on the writs, which came to his hands after the plaintiffs' possession under their mortgage, and the knowledge of their claim by the officer.

The return of the writs to court, with the attachments indorsed thereon, and the subsequent sale of the property on the execution obtained in the suit of the Canal Bank, after the debt in favor of Tappan was paid, was an injury to the plaintiffs, for which they were entitled to damages.

This action cannot be maintained for the retention of the property upon Tappan's writ, so long as that attachment remained unimpaired ; neither can the plaintiff recover damages in this suit for the *sale* of the property, which was not made, till after its commencement, but the brief statement admits the attempt to · *hold* the property by the defendant, for the security of debts in favor of the Canal Bank and others, after the deputy was apprized of the existence of the mortgage and the

possession under it, when the attachments upon these debts were of no validity.

The plaintiffs had an interest in the goods, after the Tappan debt should be paid. For a violation of their rights in the enjoyment of this interest, subject to the officer's right under the attachment, an action on the case can be maintained.

The statute having abolished the distinction between trespass and trespass on the case, there is no impediment to the plaintiff's recovery in this action. *Welch* v. *Whittemore,* 25 Maine, 86.

The defendant having deprived the plaintiffs of their right in the withholding the goods from their possession, for an unauthorized purpose, is accountable for their value after deducting the amount of the debt in favor of Tappan, and all costs thereon.