Hetherington and Winslow v. Hayden, Sheriff.

1. ASSIGNMENT SUBJECT TO LEVY. The assignee of railroad bonds under

an assignment made after the levy of an execution thereon, takes the same subject to such levy.

2. RAILROAD BONDS SUBJECT TO LEVY. Held when a railroad company received a number of its own mortgage bonds from a debtor in the payment of his debt, not for the purpose of cancelling the same, but with the intention of again putting them in circulation as securities, that they were the property of the company, and as such, were sub-, ject to the levy of an execution against its property. WRIGHT, J., *dissenting*.

*Appeal from Dubuque City Court.*

SATURDAY, DECEMBER 22.

THE facts are fully stated in the opinion of the court.

*J. S. Covil* for the appellant.

I. Railroad mortgage bonds are peculiar instruments intended to form a part of currency of the country, and are not to be regarded as ordinary bonds and promissory notes. As such, the company by whom they were issued may own its own bonds in the same sense that bank bills may be owned by the bank which put them in circulation. GREER, J. in *McCoy* v. *The County of Washington*, 7 Am. Law. Reg. 196; *Carr* v. *Lefever*, 27 Parm. S. R. 418; *Crary* v. *The City of Vicksburg*, 31 Miss. R. 251; *Wookey* v. *Pale*, 4 B. & A. 367; *Gorzier* v. *Melville*, 3 Barn. & Cress. 45; 1 Par. Cont. 240; Williams on Per. Prop. 311, (marginal;) Pierce R. R. Law 129; *McNellage* v. *Holloway*, 1 Barn. & Ald. 222; *Morris Canal Bank* v. *Fisher*, 1 Stockton 607, approved in *Mechanics Bank* v. *New York & New Hampshire Railroad Company*, 3 Ker. 625; also in S. C. 4 Duer 582; *Bank of the Old Dominion* v. *Dubuque & Pacific Railroad Company*, 8 Iowa 280.

II. If it is said that the bonds come back into the hands of the company, and by that act becomes of no value, we answer they remain of no value and can not be again issued. The plaintiff, under that theory, has no title. *Bullard* v.

*Greenbush*, 24 Maine 336 ; *Beebe* v. *Real Estate*, 4 Pike 550 ; *City Bank of Columbus* v. *Brace*, 17 N. Y. R. 511.

III. The company could not, after the levy upon these bonds, transfer the title to them free from the lien of the levy. *Penrose* v. *Erie Canal Company*, 7 Am. Law Reg 126.

*Samuels, Allison & Crane* for the appellees.

I. The Railroad company had no interest in the bonds upon which an attachment could be levied. Gwynne on Sher. 224 ; 1 Cow. 240 ; 2 Kent Com. 351.

II. The moment Langworthy set apart or designated the bonds in dispute as the bonds of the company an action of replevin was maintainable by the company to recover possession of them. *Southern Plank Road Company* v. *Hixon*, 5 Ired. 165 ; *Sawyer* v. *Baldwin*, Ib. 492 ; *McCoy* v. *Cadle*, 4 Iowa 557.

III. The right to maintain an action of replevin was duly transferred by the company to the plaintiffs. Code of 1851, sections 947, 1676 ; *Harlan* v. *Harlan*, 15 Penn. S. R. 507.

IV. As these bonds were not yet due, the company had the right to re-issue them, in the same manner that a bank may re-issue its bills and a corporation its stock. *Ballard* v. *Greenbush*, 24 Maine ; *The City Bank of Columbus* v. *Bruce, supra* ; *Beebe* v. *The Real Estate Bank*, 4 Pike 550.

Lowe, C. J.[1]—On the 12th day of November, 1859, the defendant as sheriff of Dubuque County, levied upon three bonds, No. 233, 234, 235, to satisfy an execution in favor of one E. D. Sweet, for $941,23 against the Dubuque Western Railroad Company.

Said bonds had been issued by said R. R. Company on the first of July, 1857, to one David G. Scott or bearer ; were payable in 20 years, at the Metropolitan Bank in the City of New York ; drew 10 per cent interest, payable semiannually. The plaintiff claiming to be entitled to the pos-

---

1. WRIGHT, J., dissenting.

session of these bonds, replevied the same, and on the 14th day of January, 1860, the cause was heard by the court, upon an agreed state of facts, of which the following is the substance and purport:

1. That the bonds in question were negotiable by delivery alone; that to liquidate a debt due from S. M. Langworthy to said Railroad Company, it was agreed between them that the said Langworthy should deliver (which he did) certain post-notes issued by said company to the nominal value of five hundred dollars, in part payment of said debt, and to execute the following agreement or receipt to deliver on demand three first mortgage bonds for the balance of the debt, to-wit:

"Rec'd, Dubuque, 26th March, 1859, of the secretary of the D. W. R. R. Company, three of the first mortgage bonds of said company for one thousand dollars each, with the January 1859 coupons cut off to be returned to said company on demand.

  (Signed)     S. M. LANGWORTHY.

No particular bonds were described other than above specified, but on the delivery of this receipt, the said company surrendered to said Langworthy their evidence of indebtedness which was canceled. That after this, to-wit, on the 12th day of November, 1859, the defendant as sheriff made a demand upon said Langworthy for any property which he had in his hands belonging to said company, out of which to satisfy said execution. Langworthy informed said defendant that he was under an agreement to deliver three first mortgage bonds to the said company on demand. That thereupon said defendant as sheriff notified said Langworthy that he levied said execution upon all the interest of said company in said agreement, and demanded that said Langworthy deliver bonds sufficient to satisfy said agreement to him as sheriff to satisfy in whole or part said execution. Accordingly Langworthy delivered to him the three bonds that were afterwards replevied, having still other similar bonds in

his possession, for which the defendant gave his receipt, and notified the secretary of the fact the same day or the day following. It was further agreed that on the 26th day of November, 1859, the said company by resolution of that date transferred to the plaintiff in this suit all the claim and right of said company against said Langworthy, arising out of the said receipt or instrument above described, for the consideration of six hundred dollars, but that said Langworthy was not notified of said transfer till the 2d day of December following. It was also agreed that it was not usual to state upon the books of the company the numbers of these bonds when transferred, but simply to describe them as construction or first mortgage bonds, pledged, paid out or returned, that they were pledged sometimes as low as twenty or twenty-five cents on the dollar. At the time of said sale to the plaintiff it is admitted that the said Hethrington was president and said Winslow, treasurer of said company. That afterward, on the 20th day of December of the same year, the plaintiffs caused the said bonds to be replevied out of the custody of the defendant, and delivered to them by virtue of their writ of replevin. It was further agreed that if the court should find that the plaintiffs are not entitled to hold said bonds so as aforesaid replevied, that said court may render judgment for said defendant for the sum of seven hundred and fifty dollars as the value of the bonds, and five and one half dollars as damages and the costs of this action; said judgment to be satisfied by paying said damages and costs, and delivering up the said bonds to defendant within five days thereafter.

It is further admitted that when Langworthy delivered the bonds in question to the sheriff they were enveloped by a wrapper with the following indorsement thereon, in the hand writing of said Langworthy:

"The within bonds, No's 233, 234, and 235 are owned by the Dubuque Western R. R. Company, for which they hold my receipts."        S. M. L.

It was also further admitted that at the time of the transaction between Langworthy and the company it was understood that Langworthy had bonds in Buffalo, and the demand was not to be made until they came on. That before they came on the company made a demand and were informed that they had not arrived yet. The right of appeal was stipulated for either party.

Upon these facts the court below rendered judgment for plaintiffs to which the defendant excepted at the time, and now appeals the cause to this court.

It would seem from the foregoing facts that on the 26th of March, 1859, S. M. Langworthy being a debtor of the Dubuque Western R. R. Company, entered into an arrangement with said company by which his liability to them was liquidated, and their evidence of his indebtedness was canceled and delivered up. This arrangement was effected by the said Langworthy paying to the said company certain post-notes which had been issued by them to the nominal value of five hundred dollars, and executing a written acknowledgment that he had received from the secretary of the company three first mortgaged bonds of one thousand dollars each, to be returned to said company on demand. By this arrangement the relation of debtor and creditor between the parties was extinguished and that of bailor and bailee created, and the instrument or receipt in question was given simply to evidence the fact that Langworthy held the bonds as trustee for the company, who became by virtue of this arrangement the legal owners thereof. It would seem from the evidence that when this settlement was made, the bonds in controversy were in Buffalo, New York, which may account for the non-delivery at the time. Still from the nature of the transaction the ownership of these bonds vested in the company, where the title continued to rest on the 12th of November following, when the defendant as sheriff levied upon them as the property of the company, and reduced them to possession by virtue of his levy. If

b nds of this description are the subject of a levy, as we are inclined to hold under the provisions of section 1892-3 of the Code, we do not perceive how it is that an assignment of the bonds made to the plaintiff's some 14 days after they were levied upon, could confer upon them the right of property and possession paramount in law to that of plaintiffs' in the execution. It is believed that they possessed no such superior right, and that they took the assignment subject to the defendant's levy, and until this is set aside or the debt for the payment of which the levy was made, is extinguished, he can not rightfully be dispossessed of the same.

The only question of difficulty in this aspect of the case is, whether bonds of this description, where they are yet the property of the company and unnegotiated, can be levied upon and sold to pay the debts of the company who issued them. If they had been issued by another company, found in the possession and levied upon as the property of the Dubuque Western Railroad Company, then, but little doubt could exist as to the right to make such levy and sale.

It is true that these bonds represent a class of securities peculiar to corporations, and occupy altogether a different relation in the stock market from ordinary commercial paper. The are regarded usually as a higher class of security than such paper, and in some respects they possess the characteristics of bank paper, that is, they represent money, they circulate freely from hand to hand without indorsement, and have a certain ascertainable value, for the reason they are secured by all the property, stock and franchises of the company, which gives them a positive value, and which can be estimated in the market. When, by the order of the company, such bonds are issued, they represent in that form the property of the company, because their property is pledged for their redemption, and they possess in that way an intrinsic value whether in or out of the possession of the company; and whether negotiated or unnegotiated they are means to an end like their rolling stock, and may be as easily

converted into money by sale. Why should they not then be equally liable to be taken on execution for the payment of their debts, if they can be reached by an officer, which would seldom be the case, it is true, while these securities were in the possession of the company.

In the case before us the bonds had been negotiated and the company had re-purchased them in payment of a debt due them, but before they were actually returned and whilst they were in the hands of a bailee, they were levied upon by the defendant as sheriff to pay the debts of the company; at that time, by the admissions of the parties, they were worth $750, and they had not been purchased back by the company for the purposes of cancellation, for after this levy they were reassigned to the plaintiffs for the consideration of six hundred dollars. We perceive, therefore, no satisfactory reason why the proceeds of the bonds should not go into the pockets of the creditors rather than of the company.

In our opinion the judgment should be reversed and the cause remanded with an order that such a judgment be rendered as was stipulated between the parties in the event the court should find for the defendant.

Reversed.

WRIGHT, J. dissenting. I can not concur in the foregoing opinion. Without elaboration, my position is this: At common law it must be admitted that these bonds, however held, could not be levied upon by execution. The Code in sections 1893–4, in connection with sections 1859–60, introduce a new rule, in providing that bank bills and other things in action, as also stock and interest in any company, may be attached or levied upon and sold. But this rule is not that a *liability* may be sold, but the *permanent right* in or to the thing. To my mind it is a misuse of terms to speak of a person or corporation having a right of action, or a thing in action against himself or itself. The law admits that the

note of A owing to B may be sold to pay B's debt, or that the stock or interest of B in a company may be sold to satisfy his indebtedness, and not that his note or that stock of a company may be·levied upon and sold to meet, in one case the debt of his creditor, and in the other that of the company. See *Courtney* v. *Carr*, 6 Iowa 238. And the rule must be the same whether it is the bond of the Railroad Company or of an individual that is the subject of the levy. These bonds are not bank bills. Now, as to the company, are they in any proper sense choses or things in action? If the latter, it would be rather difficult to perceive how the company would proceed by writ at law to reduce to possession the personal right in said bonds. Who would the the company sue, and against whom recover judgment?