15  215
18  395
17  442
30*1086
19  429
14* 601

15  215
22  453

[No. 958.]

# D. MORESI, RESPONDENT, *v.* S. T. SWIFT, APPELLANT.

PERSONAL PROPERTY—LIEN OF ATTACHMENT—WHEN SUPERIOR TO LIEN OF CHATTEL MORTGAGE—MORTGAGEE ACCEPTING TRUST AS KEEPER.—L., being indebted to D. and M., executed to D. a bill of sale of certain personal property, and agreed that he should have possession of the property until the indebtedness to D. and M. was paid. Subsequently, one W. brought suit against L. and attached the property, it then being, as claimed by W., in the possession of L. The sheriff appointed D. as keeper. The property was afterwards taken to the ranch of M. by order of L., and thereafter D. conveyed his interest in the property and bill of sale to M. There was no proof that D. ever returned the property to the sheriff, or that he was ever released or discharged as keeper: *Held*, that W. s rights as an attaching creditor, if his attachment lien was valid, were superior to the rights of D. as a mortgagee, or of M. as a subsequent purchaser.

VALIDITY OF UNDERTAKING FOR ATTACHMENT—CAN NOT BE RAISED COLLATERALLY.—An objection to the validity of an attachment upon the ground that the affidavit and undertaking was defective, can not be raised by a third party in a collateral proceeding.

ERRORS AGAINST RESPONDENT WILL NOT BE CONSIDERED.—The supreme court will only consider such questions as are assigned as error by appellant. (*Maher* v. *Swift*, 14 Nev. 324, affirmed.)

MORTGAGEE ACCEPTING TRUST AS KEEPER—WHEN ESTOPPED FROM DENYING VALIDITY OF ATTACHMENT LIEN.—A mortgagee of personal property, after accepting the trust as keeper of the property for the sheriff in the suit of an attaching creditor, is estopped from claiming that the lien of the attachment was lost by any act of his.

BONA FIDE PURCHASER—PAYMENT OF PURCHASE MONEY.—To entitle a party to the character of a *bona fide* purchaser, without notice, he must have acquired the legal title, and have actually paid the purchase money before receiving notice of the equity of another party.

ATTACHMENT LIEN—FAILURE OF OFFICER TO KEEP POSSESSION.—The court instructed the jury, in effect, that they could find a verdict in favor of the subsequent purchaser, under assignment of the chattel mortgage, upon the ground that the attachment lien, although valid, and creating prior rights in favor of the attaching creditor, was subsequently lost by reason of the sheriff's failure to retain the possession, custody, and control of the property: *Held*, that upon the facts of this case, the instructions were calculated to mislead the jury, and were erroneous. (Hawley, J., dissenting.)

CHATTEL MORTGAGE—DELIVERY OF POSSESSION—CONTINUED CHANGE OF POSSESSION.—The court instructed the jury that a simple delivery, or getting possession at any time after the sale, rendered the sale or contract of mortgage valid as against an attaching creditor: *Held*, erroneous; that there must also have been a continued change of possession.

CONSTRUCTIVE POSSESSION OF PERSONAL PROPERTY UNDER ATTACHMENT SUF-

FICIENT.—The court instructed the jury that "it is as essential that an officer levying a writ of attachment should actually retain actual possession and custody of the property attached, as that he should take the possession and custody at the time of the levy:" *Held,* error; that constructive possession by the keeper was all that the law required.

WITNESS SWEARING FALSELY—WHEN HIS TESTIMONY TO BE DISREGARDED—MATERIAL MATTERS.—The court instructed the jury that if they believed "a witness has willfully sworn falsely on any matter in the case," they might disregard his entire testimony: *Held,* error; that the privilege should have been limited to witnesses who had willfully sworn falsely upon a material matter.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

The facts appear in the opinion.

*R. M. Clarke,* for Appellant:

I. Lopez having continued in possession and control of the property as to Winter, who was an attaching creditor, the bill of sale to Davis is void. (Comp. L., sec. 292, 294; 4 Nev. 361; 15 Cal. 503; 1 Nev. 222; 10 Id. 422.)

II. The sheriff having returned that he seized the property in attachment, his return is conclusive and can not be collaterally attacked. (*Newton* v. *Bank,* 14 Ark. 9; 5 Cal. 53; *Morse* v. *Smith,* 47 N. H. 477; *Sperling* v. *Levy,* 1 Daly. (N. Y.), 95.)

III. Davis having accepted the office of sheriff's keeper, is estopped to deny the attachment.

IV. The removal of the property to Ormsby county was a fraud upon the attaching creditor, and neither Davis nor Moresi, who was his vendee with notice, can take advantage of it.

V. As between Davis and Moresi there never was a delivery; first, because Davis had not the possession to deliver; if he had any possession, it was the possession of keeper; second, because Moresi never took possession. The property was not present, and he did not see it until after it was taken by the sheriff.

VI. If there was no valid attachment, there was a valid levy of the execution, and the execution was levied before Moresi or Davis had acquired possession.

VII. If any errors were committed against the respondent in the court below, they can not be considered or reviewed on this appeal. (*Seawan* v. *Malotte*, 15 Cal. 304; *Jackson* v. *F. R. W. Co.*, 14 Id. 18; 18 Id. 698.)

VIII. Plaintiffs instructions were erroneous. (1 Comp. L. 292, 294.)

*A. C. Ellis*, for Respondent:

I. No lien was ever acquired upon the property in question by virtue of the alleged attachment in the case of *Winters* v. *Lopez*, because the writ was never served as required by law; possession of the property was never taken.

II. If any lien was ever created, it was lost by the sheriff parting with the possession. (Drake on Attach., sec. 423 *et seq.*, and authorities there cited.)

III. No lien was created, or preserved, under said attachment, because the alleged attachment was void *ab initio*. There was no showing that the affidavit, as required by law, was ever made by or on behalf of Winters. The undertaking was not in conformity with law, it not being for gold coin of the United States. (Stat. 1869, Civ. Pr. Act, secs. 123-4.)

IV. It is incumbent on the party asserting a right under a judgment of a justice's court, to show affirmatively the regularity of the proceedings relied on. (*Swain* v. *Chase*, 12 Cal. 283; *King* v. *Randlett*, 33 Id. 318; *Jolly* v. *Foltz*, 34 Id. 321; 1 Nev. 188; 1 Id. 82; 2 Id. 109; 5 Id. 90.)

V. If there ever was any levy of the attachment, and if the sheriff retained the possession and control of the property, still the plaintiff was entitled to the possession of the property as against the defendant, because of the fact that the levy was a conditional one, contingent upon the right of Davis and Moresi.

VI. The return of the officer is only *prima facie* evidence; it is not conclusive. (Drake on Attach., sec. 206, and authorities cited; 9 Johnson, 96; Drake on Attach., sec. 210, and authorities cited; *Ritter* v. *Scannel*, 11 Cal. 249.)

By the Court, LEONARD, J.:

On the seventeenth of July, 1876, D. Lopez, then owner

of the mules and other property in controversy, executed and delivered a bill of sale of the same to W. T. Davis, which, according to its terms, was intended as a chattel mortgage, to secure payment of the sum of one thousand five hundred dollars, due from Lopez, in part to Davis Bros. & Co., and the balance to respondent, Moresi; and as part of the same transaction, W. T. Davis and respondent entered into a written agreement that the said property should be put in charge of some proper person, and used in packing wood for respondent, at an agreed price per cord; and that, at the end of each month, after deducting the expenses, the remainder of the money earned in packing during the previous month should be divided between them according to their respective claims.

The property was kept at work under the agreement until the eighteenth of December, 1876.

There was testimony tending to show, that the net earnings of the train were nearly or quite enough to pay the respective claims of Davis Bros. & Co. and respondent, while, according to other testimony, it did not earn its expenses.

On the ninth day of October, 1876, J. N. Winter brought suit in justice's court, Douglas county, Nevada, against D. Lopez, and in that case, the sheriff certified in his return upon the writ of attachment, that he had attached "eleven head of mules, and the harness and fixtures thereto belonging" (including property in dispute), "as the property of the within-named defendant (D. Lopez), and placed Buck Davis (W. T. Davis), as keeper of the same, October 11, 1876." On the eighteenth day of December, 1876, the mules and packing apparatus were brought to Carson and put on a ranch owned by respondent, where the mules remained until the twenty-third day of December, when they were levied on, and afterwards sold, by appellant, as sheriff of Ormsby county, under an execution issued in the case of *Winter* v. *Lopez.* Lopez claimed to have placed them upon the ranch, while respondent testified that they were put there by his order. On the twenty-second day of December, when the mules were upon the ranch, and the day before appellant's levy under the execution, W. T. Davis, by

his partner, S. C. Davis, executed and delivered to respondent an assignment of the bill of sale, or chattel mortgage, from Lopez, in the following words, viz.: "Know all men by these presents, that I, W. T. Davis, named in the annexed instrument, in consideration of five hundred dollars, gold coin, to me in hand paid by D. Moresi, * * * the receipt whereof is hereby acknowledged, have sold, transferred, assigned, and set over, and by these presents do sell, transfer, assign, and set over to the said Moresi, his heirs and assigns, the said instrument, and all my right, title, and interest in and to the same, authorizing him in my name, or otherwise, but at his own cost, charge, and expense, to enforce the same according to the tenor thereof, and to take all legal measures which may be proper or necessary for the complete recovery and enjoyment of the assigned property." There was no proof that any portion of the consideration for the assignment was paid in fact, either before or after the levy under execution, other than the receipt or recital contained in the assignment itself.

This action was brought to recover the property sold under execution issued upon the Winter judgment, or its value. Respondent recovered judgment in the court below, and this appeal is from that judgment and the order overruling appellant's motion for a new trial.

Upon many important issues the evidence was very conflicting. Plaintiff claimed that the property was delivered to Davis upon the execution of the bill of sale by Lopez, to be used under plaintiff's direction, and that it was so used, and the possession thereof retained by Davis and himself, under the bill of sale, until it was levied on by defendant under Winter's execution, and, consequently, that plaintiff's rights under the chattel mortgage were superior to the rights of Winter under the attachment and execution.

On the contrary, defendant claimed, that subsequent to the date of the bill of sale, and at the time of the attachment, Lopez had the custody and control of the property, and therefore, that Winter acquired a prior lien by his attachment; that Davis was appointed sheriff's keeper, and consented to act as such; that Lopez continued, with the

consent of Davis, to use the property as before, until the eighteenth day of December, 1876, when it was taken by Lopez and his men to Moresi's ranch, and there turned out to pasture.

It is urged by counsel for respondent, that Winter acquired no lien by attachment, because the affidavit and undertaking were not in conformity with the statute. If it be true that those instruments were faulty, and if we could consider any errors besides those committed against appellant, still we are of opinion that respondent can not, in this action, question the regularity of the proceedings in attachment, although it may be true that Lopez might have done so in his action. There was an affidavit and an undertaking, whether they were sufficient under the statute or not, and it is not claimed that the demand of Winter was fraudulent. (Drake on Attach., sec. 273, and authorities there cited; *Dixey* v. *Pollock*, 8 Cal. 573; *M'Comb* v. *Reed*, 28 Id. 285; *Morgan* v. *Avery*, 7 Barb. 657.) Respondent claims, also, that the court erred in striking out certain testimony in relation to the manner of making the levy under the writ of attachment. We are only called upon to examine errors assigned by appellant. (*Maher* v. *Swift*, 14 Nev. 324.)

The verdict of the jury was general and in favor of respondent, but it is impossible to know whether it was based upon a conclusion that possession of the property was taken by Davis and thereafter retained through himself and competent agents, under the bill of sale, and, consequently, that Winter's lien was subordinate to the rights of respondent; or upon the conclusion that the possession had not been taken and retained by Davis, and hence that the property was subject to attachment by *bona fide* creditors of Lopez, and, consequently, that Winter obtained a prior lien, but lost it before the assignment of the bill of sale to respondent, by reason of failure on the part of the sheriff, or his keeper, to retain it in custody. Under the testimony and instructions the jury may have found for respondent upon the latter conclusion as well as the first. We must presume that the attachment was valid, nothing to the contrary ap-

pearing, and that, by it, Winter obtained a lien prior or sub-ordinate to the rights of respondent; and if the jury found as they might have done, that Winter obtained a prior lien by reason of failure on the part of Davis to take and retain the custody and control of the property subsequent to the date of the bill of sale, but that such lien was lost before, and at the time of its assignment, because the sheriff, or his keeper, failed to retain possession, then, in our opinion, several instructions were erroneous.    There was a great deal of testimony to sustain the claim of each party as to the situation of the property at the time of the attachment, and each had a right to demand that the jury should be properly instructed, upon the hypothesis that they would find the facts in his favor.   The jury were instructed in part upon the theory that Winter obtained a prior lien by virtue of his attachment, and that the sheriff appointed W. T. Davis keeper of the same.   There is no proof that the keeper ever returned the property to the sheriff, or that he was ever released or discharged.   We must then consider the instructions upon the theory just mentioned.   It is un-doubtedly true, as a general rule, that a *bona fide* vendee or mortgagee of personal property, who takes possession at a time subsequent to the sale or mortgage, but before the rights of creditors or other *bona fide* purchasers accrue by attachment, purchase, or otherwise, may hold the same against such creditors or purchasers.   (*Clute* v. *Steele*, 6 Nev. 339; *Coty* v. *Barnes*, 20 Vt. 78; *Frank* v. *Miner*, 50 Ill. 444.)

It is also true, generally, that as to *bona fide* purchasers and mortgagees, an officer who attaches personal property must take and retain possession and control of the same. He may do so by himself in person, or by another.   Unless authorized by special statute, or by the consent of *bona fide* purchasers and mortgagees, he can not, so far as the latter are concerned, appoint the debtor as his keeper, without dissolving the attachment; and for the purposes of this case, it may be admitted that, as to *bona fide* purchasers and mort-gagees, without their consent, neither he nor his keeper can permit the property attached to remain in the custody and

control of the debtor, without dissolving the attachment. But if, by the attachment, Winter acquired a prior lien, and Davis consented to act as keeper, and was appointed and put in charge as such, then the property was in the custody of the law, and *his possession under the bill of sale was vacated or suspended.* And thereafter, so long as he was keeper, his possession was, first, under the attachment, as the servant of the sheriff, so far as he was concerned. In other words, had there been no assignment of the bill of sale to respondent, Davis, by retaining personal possession and control, could not have claimed, successfully, that the possession subsequent to the attachment was *his, under the bill of sale, and not the sheriff's, under the attachment;* and if the attachment lien was first, and his second, he could not have reversed the order of preference, after accepting the position of keeper, so long as he retained it, by permitting the possession and control to pass into the hands of Moresi or Lopez, and from them to him. Had the sheriff left the property with Lopez as keeper, at the request of Davis, and had there been no assignment, the latter would not have been entitled to the possession under his bill of sale, on the ground that the sheriff had appointed the debtor his keeper, and left the property in his charge; nor, under such circumstances, would the attachment lien have been lost, as to Davis, had Lopez delivered the property back to Davis. And, too, had there been no assignment, for the same reason as stated above, Davis could not have put and kept Lopez or Moresi in possession, while he was keeper, and then claimed, that by his own act, Winter had lost his lien. After assuming the office of keeper he could not then have maintained the position that the attachment was lost, as to him, by an act to which he consented and which he caused. Had there been no assignment, then, the attachment lien would have continued as to Davis, even though Lopez had the custody. So it would have been, if respondent or any other agent of Davis had it in charge. Then up to and at the time of the assignment, as to Davis, Winter had a prior lien, if he acquired such at the time of the attachment; because, whoever had the personal charge and

control, he had it as the agent of Davis, by his consent and request.   The question then arises, as between respondent, the assignee of Davis, and Winter, has the former any other or greater rights than Davis would have had if he had obtained peaceable and lawful possession, at the same time, from Moresi or Lopez?   We think not.   He certainly has not, if, prior to the assignment, he had notice of the attachment and that Davis was acting as keeper.   (Kerr on Fraud and Mistake, 315.)   But passing that, there are other reasons for this conclusion.

In the first place, as before stated, there was no proof that, prior to appellant's levy under the execution, respondent paid anything for the assignment, except the recital and receipts therein, that the consideration therefor was five hundred dollars, which sum had been paid.   And admitting that the bill of sale, although intended as a mortgage, vested the legal title to the property in Davis, and therefore, at the time of the attachment, as between himself and Lopez, that he held more than a mere equity, still, in order to entitle respondent to the character of a *bona fide* purchaser without notice, he must have acquired the legal title and have actually paid the purchase money before receiving notice. (Kerr on Fraud and Mistake, 318.)

" The rule that a man who advances money *bona fide* and without notice, will be protected in equity, applies equally to real estate, chattels, and personal estate." (Id. 313.)

" The purchase must be made in good faith, for a valuable consideration, and the purchase price must be wholly paid and the conveyance of the legal title received before notice.   The purchaser of an equity is bound to take notice of a prior equity." (2 Story's Eq. Jur., secs. 1502, 1232; 2 Lead. Cas. in Eq., part 1, 36, 73.)

" The purchaser is not protected if he have notice before the execution of the deed and payment of the purchase money, for until then the transaction is not complete." (*Union Canal Co.* v. *Young,* 1 Whart. 432; see, also, *Jackson* v. *Summerville,* 13 Pa. St. 359; Story Eq. Pl., sec. 604, *a.*)

" The rule proceeds upon the ground that, as the purchaser is taking the transfer of a title which defeats the

equitable rights of a third person, he shall be held to take subject to all the equities that attach to it at the time it passes. If, therefore, he pays no money when the title passes, he has. no equity to set up against the equity of a third person, and if he has notice before he pays the money he pays in his wrong." (1 Perry on Trusts, sec. 221. See *Blanchard* v. *Tyler*, 12 Mich. 339; *Palmer* v. *Williams*, 24 Id. 329; Bump on Fraud. Conv. 477; *Dresser* v. *Mo. & Iowa R. R. Co.*, 3 Otto, 92.)

The *onus* of proving payment was upon respondent, and the receipt or recital in the assignment was not evidence of payment against Winter, a stranger to the transaction.. (*Bolton* v. *Johns*, 5 Pa. St. 151; *Lloyd* v. *Lynch*, 28 Id. 425; *Union Canal Co.* v. *Young*, 1 Whart. (Pa.) 432.)

Again, although respondent had an equitable interest in the bill of sale from Lopez to Davis, before the assignment, as well as in the property in dispute, still, that interest was, by the attachment, subjected to the prior lien of Winter. By the assignment, the interest of Davis only was transferred, and that, as to him, was burdened with the prior attachment lien. He could not assign, nor did he undertake to assign, any interest beyond what he possessed.

In *Wright* v. *Levy*, 12 Cal. 257, the facts were as follows: Levy executed and delivered a promissory note to Newmark. The note was given without consideration, and for the purpose of defrauding the creditors of Levy. Newmark was aware of the fraud and participated in it. Subsequently Newmark sued out an attachment upon his note and levied upon the property of Levy. . After Newmark's levy, Wright and others, creditors of Levy, also levied upon the same property. After Wright's levy, and pending the suit of Newmark, the latter sold and assigned, for a valuable consideration, the note executed by Levy, together with the action then pending, to defendant Jones, who was an innocent purchaser, and knew nothing of the fraudulent intent of Newmark and Levy. Judgment was obtained in each case, and thereupon Wright and other creditors filed a bill against Levy, Jones, and others, setting up the fraud, and praying that plaintiff might be adjudged entitled to the

money arising from the sale of the property then in the hands of the sheriff. The court below dismissed the bill and gave judgment for defendant, Jones.

The supreme court said: "It now appears that after Newmark's attachment was levied, the plaintiff got out an attachment on his debt, and it was levied on the same property as Newmark's; and that pending these attachments, and before judgment, Newmark assigned the note and lawsuit to the defendant Jones. It is found by the court that this note, attachment, etc., of Newmark, were fraudulent, but that the fraud was not known to Jones, who bought for value. The question then comes up, whether Jones is protected in his purchase? We think, on this hypothesis of fact, he is not. Newmark's proceedings were all void against the plaintiff. The plaintiff, by his levy, took the property subject only to the superior rights, or the claim, of Newmark. He had, under the assumed facts, the real title as against Newmark. In this condition Jones buys, but Jones has only the right Newmark had. Newmark having been, in fact, superseded by plaintiff, could not, by any deed, or act of his, put his assignee in any better position. The question is not as to the equities of third persons; the question is as to the relative equities of Jones and Wright; and it seems Wright has, as against Jones, the oldest equity and the legal title. While the property was legally subject to his claim, Wright subjected it to his attachment; his title then vested, so to speak. No act of Newmark, subsequently, could divest it. All this is said on the assumption of the fraud of the Newmark proceedings; for the effect of that fraud, unquestionably, is to make those proceedings nullities as against Wright. When they were nullities, Wright levied on the property, and, of course, his title dating from the levy, is superior to Jones' title, dating from the assignment to him by Newmark. None of the authorities cited by respondent's counsel apply to such a case as this.  *  *  *

It is true that the case in 18 Johns. (*Anderson* v. *Roberts*, 531) only holds that after a sale on execution of real estate fraudulently conveyed, the sale being made of it as the property of the fraudulent grantor, an innocent grantor

(grantee) takes no title; but the effect of a levy on chattels is not less decisive in changing the title and vesting it in the sheriff as trustee for the creditor. After it does so vest, a sale by the fraudulent grantee can not alter it. The question is not whether, when Jones took the assignment of the note, he took a good title as against third persons to the note, but whether, when he took, as incident to the note, a title or claim to the property attached, he took a superior right to the plaintiff, who had an older and better claim on it. If, by operation of law, Wright's claim to this property was superior to Newmark's, Wright was as much entitled to priority over Jones as if his right was given by contract."

As in that case the proceedings were all void against Wright, an attaching creditor of Levy, by reason of the fraud, so in this, upon the hypothesis assumed, the bill of sale was fraudulent and void against Winter, by reason of failure to retain possession by Davis, and by the attachment, the sheriff, as trustee for Winter, acquired a special property in the articles attached, which could not be taken away by any act of Davis. (See *Hetherington* v. *Hayden*, 11 Iowa, 340–341.)

Besides, as before stated, by the terms of the assignment itself, Davis only " sold, transferred, assigned, and set over " to respondent his "right, title, and interest " in and to the bill of sale, with power to enforce the same according to its tenor.

In *Morse* v. *Godfrey*, 3 Story, 391, it is said: "But there is another ground, independent of this, and quite decisive against the bank. It is this: that the very deed of transfer, by its terms, purports to ' sell, assign, transfer and set over ' to the bank, all the right, title, and interest of Godfrey in and to the stock in the store, derived from the mortgage of Reed, and it contains no covenants whatsoever as to the title or otherwise. So that, it is a mere naked conveyance to the bank of the very right, title, and interest which Godfrey derived from the mortgage of Reed, and nothing more. The bank, therefore, took nothing but the ' right, title, and interest ' of Godfrey, subject to all its original infirmities, and can now claim under it nothing which

Godfrey himself could not claim against the assignee." But here, Davis did not, in terms, assign the interest he obtained from Lopez, but only the interest he had at the time of the assignment, and that, upon the assumption that Winter's lien was prior, was the right to subject the property to the payment of his claim, after the first lien had been satisfied. Our conclusion is, that although in respect to strangers, other creditors or purchasers for value from Lopez, without notice, the attachment might have been inoperative, it was not so as to Davis, whether he left the property in charge of Lopez, Moresi, or other agents (Story on Bailments, sec. 125; *Bridge* v. *Wyman*, 14 Mass. 194; *Wheeler* v. *Nichols*, 32 Me. 240, 241); that if Davis, at the time of the assignment, had obtained or retaken possession from either of the parties above named, instead of making an assignment to respondent, he could not have claimed a prior right to the property under the bill of sale, and that respondent stands in no more favorable position.

The foregoing is based, of course, upon the assumption that the jury may have found for respondent, under the instructions, upon the ground that the attachment lien, although valid and creating prior rights in favor of Winter, was subsequently lost by reason of the sheriff's failure to retain its custody and control. Proceeding upon the same assumption, it becomes necessary to examine some of the instructions given for respondent.

The fourth instruction informed the jury that, "where personal property is sold or mortgaged, and the purchaser or mortgagee gets the possession of such property at any time after the sale or mortgaging, but before the levy of an attachment or execution, such delivery or getting of possession before such levy will be sufficient under the statute of frauds, and render such sale or contract of mortgage valid as against such levy of attachment or execution."

The language of the instruction quoted was used, substantially, and adopted as correct, in *Clute* v. *Steele*, 6 Nev. 335, and, in that case, was entirely correct; for there the only question was, as to the meaning of the words "imme-

diate delivery," as used in the statute. (Stat. 1861, p. 20, sec. 64.) There was no question in that case, but that before the attachment, and at the time thereof, the possession was in the vendee. But here, it was strenuously urged by appellant, and the testimony of several witnesses tended to show, that at the time of the attachment the possession and control was, and for a long time prior thereto had been, in the possession of Lopez. Under such circumstances, it was error to instruct that a simple delivery or getting of possession at any time after the sale, rendered the sale or contract of mortgage valid as against an attaching creditor; because there was much testimony to the effect that, quite immediately after the bill of sale was executed, and until the attachment, the property was in the possession of Lopez. It was not only necessary for Davis to have gotten possession before the attachment, but a sufficient continued change of possession thereafter was just as requisite.

The sixth instruction was based upon the hypothesis, that the respondent had the actual possession of the property from and after the execution of the bill of sale by Lopez, *and that he was the agent of Davis.*

The seventh instruction was as follows: "It is as essential that an officer levying a writ of attachment should actually retain actual possession and custody of the property attached, as that he should take the possession and custody *at the time of the levy*, and if the officer levying the writ of attachment, surrender or by any means lose, whether by design, or negligence, or accident, the actual possession and custody of such property, then other attaching creditors or purchasers or mortgagees in good faith for value, may acquire possession of the same, unless such person be in the possession as keeper, and such possession will hold against such attachment, and in the case of a purchaser or mortgagee, against any subsequent levy by attachment or execution." It is difficult to say what was intended by that instruction. Still, the jury might well have understood it as instructing them that, if the sheriff surrendered, or by any means lost, the *actual* custody, whether by the design of Davis or otherwise, yet if respondent was an assignee of

the bill of sale in good faith, for value, he could hold the property if he was not a keeper, and that was not claimed.

In the first place, there was no proof that respondent was a *bona fide* purchaser for value, as before stated, and it was error to instruct the jury as though he was such. In the second place, as to Davis, the sheriff's constructive possession was not lost, because the property was all the time in the custody of some agent of Davis, by his consent. So far as Davis was concerned, the sheriff had constructive possession all the time, for there was no testimony that Davis ever resigned his position, or asked to be, or was, released from his responsibility, and his possession as keeper was the possession of the sheriff. (Drake on Attach., sec. 431.)

The jury were told that it was as necessary that *the officer levying the writ* should actually retain the *actual* possession as that he should take possession at the time of the levy. Now, it was not necessary that the sheriff should retain the actual possession. Constructive possession by a keeper was all that the law required.

"An indispensable element of the continued existence of the lien is the officer's continued possession of the property, actual or constructive, that is, personally or by another." (Drake on Attach., sec. 350.)

The seventh instruction was misleading and erroneous.

Following is the ninth instruction: "If the jury believe from the evidence that Damacio Lopez sold or mortgaged the property in controversy to W. T. Davis, and that the said Davis, or his assignee, or vendee, got lawful possession of said property, either at the ranch of Moresi in Ormsby county or elsewhere, and that such possession was acquired peaceably and fairly and legally at any time before the actual levy of the execution in the hands of defendant Swift, and if the jury further believe from the evidence that there was a contract of mortgage between Lopez and W. T. Davis, to secure debts from said Lopez to said Davis and Moresi, or either of them, and that said indebtedness is still unsatisfied in whole or in part, then the jury should find for the plaintiff."

It is difficult to perceive how the jury could have done otherwise than to find a verdict for respondent, under that instruction, if they believed that the indebtedness from Lopez had not been fully paid, although they might have believed also that Winter obtained a prior lien by his attachment; that Davis was keeper and had control and custody of the property by himself or his agents.

The possession of Davis or Moresi was "lawful," and it was "peaceably, fairly, and legally acquired," although Davis was keeper and Moresi his agent; but if Winter acquired a prior lien, and Davis was appointed and acted as keeper and Moresi as the keeper's agent, it is not true, for the reasons before stated, that fair, peaceable, and lawful possession by Davis or Moresi, at any time before levy under execution, necessarily entitled respondent to recover.

The tenth instruction was given upon the hypothesis that Lopez had the actual possession from and after the execution of the bill of sale, as claimed by appellant, and was as follows: "If the jury believe, from the evidence, that Damacio Lopez had actual possession and control of the pack train and property in controversy from and after the alleged execution of the bill of sale or chattel mortgage from him to W. T. Davis,  *   *   *   and that Moresi or W. T. Davis paid the expenses of running the pack train and received the benefit of the earnings of said train in the discharge of any debt of said Lopez to Davis and Moresi, or either of them; still the jury should find for plaintiff if they further find, from the evidence, that any portion of such debts from Lopez to Davis or Moresi was unsatisfied, and that afterwards, but not as keeper, Davis or his assignee, Moresi, had gotten lawful possession of such property, at any time before the levy of the execution by Swift, whether possession was acquired at the ranch of Moresi or elsewhere."

By the twelfth instruction the jury were advised that, " a party in possession of land is presumed to be in possession of the personal property thereon until the contrary is shown." In brief, the jury were instructed that respondent could recover if he got *lawful* possession from Lopez at any

time before levy under the execution, and the mortgage debt was not paid. If Lopez had actual possession and control of the property from and after the execution of the bill of sale, as the instruction assumes to have been the case, then he brought it to respondent's ranch, as he testified that he did. If such was the case, and possession of the ranch was presumptive evidence of respondent's possession of the personal property thereon, then he must have been in "lawful" possession so far as he was concerned; for certainly, upon those facts, he did nothing unlawful. The jury, then, were bound to find for him, under the instruction, notwithstanding the facts that Winter may have acquired a prior lien; that there was no proof that respondent paid any consideration for the assignment; that he purchased no other or greater interest or better title than Davis had at the time; that Davis, had he obtained the actual possession from either Lopez or Moresi, instead of assigning his interest to respondent, could not have recovered, and that respondent was in no better situation. The fourteenth instruction was erroneous in permitting the jury to disregard the entire testimony of "a witness who had willfully sworn falsely on *any* matter in the case." That privilege should have been limited to witnesses who had willfully sworn falsely upon a *material* matter. We deem it unnecessary to consider the instructions offered by appellant and refused by the court. Enough has been said already to indicate the rights of the parties at another trial.

The judgment and order appealed from are reversed, and the cause remanded.

HAWLEY, J., dissenting:

There were two theories, upon either of which, the respondent claimed that he was entitled to recover a verdict.

First, upon the ground that at the time of the pretended levy of the attachment, and for a long time prior thereto, W. T. Davis & Co., as mortgagees, had the actual, open, and notorious possession of the property in controversy, and that the attachment, if levied, was subject to their rights as mortgagees. Second, that if there was a valid attachment,

the lien was lost by a failure upon the part of the attaching officer to keep possession of the property.

Upon the first point, as to the possession of the property, prior to the attachment, there was a substantial conflict of evidence sufficient to have sustained a verdict on either side.

Appellant, to prove the levy of the attachment and the appointment of W. T. Davis, as keeper, relied upon the sheriff's return to the writ of attachment.

Respondent sought to show by the testimony of the sheriff that the attachment was levied, if at all, subject to the rights of the mortgagees, and that the appointment of Davis, as keeper, was made subject to his claim as a mortgagee; but this evidence was erroneously excluded by the court. The respondent claimed, in the first instance, that the testimony submitted upon his part, if believed, entitled him to a verdict. Second, that if the jury disbelieved his side of the story, and believed appellant's witnesses, then the same result would inevitably follow, because it affirmatively appeared therefrom that if there was any valid attachment (which respondent continually denied), it was lost by a failure upon the part of the attaching officer to keep the custody and control of the property. It is upon the latter theory that the instructions complained of were given. The return of the officer does not show, or tend to show, that the property attached thereafter remained in the possession of the sheriff or his keeper. There is no testimony that Davis, as keeper, turned over the possession of the property to Lopez, or to anybody else. There is no testimony that the lien of the attachment (if any ever existed) was lost by any act or agency of Davis, as keeper.

Lopez testified that he had the custody and control of the property after, as well as before, the levy of the attachment; that he ordered the mules brought down, and directed that they should be put upon the ranch owned by Moresi.

If Moresi obtained the possession by any illegal, forcible, or fraudulent means, or through any act or agency upon the part of Davis, as keeper, he would, of course, be estopped from claiming any benefit on account of such possession.

But, on the other hand, if he obtained the possession honestly, if there were no illegal, forcible, or fraudulent means used by him, or any one acting in his behalf, to secure the possession and control of the property, and he did not secure such possession through any act or agency of Davis, as keeper, then, certainly, he would not be estopped from denying the pretended lien of the attachment.

It may be admitted that some of the instructions given upon this point were, standing alone, calculated to mislead the jury; but when they are, as they should be, taken as a whole and construed together with reference to the particular facts and circumstances testified to in this case, I do not think the jury could have been misled upon the real questions at issue.

If the jurors believed that W. T. Davis, in violation of his duties and of the trusts reposed in him, as keeper, allowed the property to be surrendered either to Lopez or Moresi (or anybody else), it was their duty, under the instructions upon this branch of the case, to have found in favor of appellant.

The instructions (taken together as before stated) properly left the questions of fact for the jury to decide whether the lien of the attachment (if valid) was kept good, or whether it was lost by a failure upon the part of the sheriff to keep the possession; and if lost, whether Moresi, without any fraudulent or illegal means on his part, or any act upon the part of Davis, as keeper, legally came into the possession of the property, and had the rightful possession of it at the time of the levy of the execution.

There was sufficient testimony upon these points to sustain a verdict in respondent's favor.

Davis & Co. were *bona fide* mortgagees, and if the lien of the attachment was lost (through no agency of W. T. Davis, as keeper), they had the unquestioned legal right to sell and dispose of their interest in the property to Moresi.

The only objection urged to the fourteenth instruction is the omission to insert the word "material." Appellant has failed to point out any *immaterial* matter testified to by any

witness, and hence has failed to affirmatively show that he might have been prejudiced by the giving of this instruction, even if it is erroneous.

In my opinion, the judgment of the district court ought to be affirmed.