PATRICK *et al* v. MONTADER *et als.*

An attachment issued before the maturity of the debt, is *prima facie* void as against a subsequent attachment.

*Taaffe* v. *Josephson*, (7 Cal.) overruled.

Where goods were fraudulently purchased by an insolvent, the creditor may attach before the maturity of the debt, and other creditors, subsequently attaching, cannot complain that the suit was prematurely brought.

The debt in such case, is equitably due, and there being no actual fraud against subsequent creditors, they cannot be preferred in equity, even if the suit could have been defeated by the debtor himself.

Where a first attachment against an insolvent is set aside as fraudulent, in a suit brought by a subsequent attaching creditor, to which various other attaching creditors, prior and subsequent, are parties, the plaintiff in the suit cannot claim priority over the attachments preceding his, on the ground, that by his superior diligence the fraud has been discovered.

Such a fund is not strictly an equitable asset. The prior attachments became liens, in the nature of a legal estate vested in the Sheriff for the benefit of the creditors. Plaintiffs' costs, disbursements, and counsel fees, however, should first be deducted from the fund before distribution.

Appeal from the Twelfth District.

Sandrie & Lange, Grocers in San Francisco, failed December 1, 1857, having been in business about two years. On that day Alfred de Montader brought suit against them in the Twelfth District Court, on their note to him for fifteen thousand and eighty dollars, and attached their stock in trade. On several

subsequent days various other creditors also levied attachments on the same stock. In due time judgments by default were entered in favor of the creditors, and the stock was sold for about seven thousand dollars, under execution upon the judgment of De Montader. Before sale, however, this suit was instituted by plaintiffs, as judgment creditors of Sandrie & Lange, against nearly all of the other judgment creditors who were prior in time to plaintiffs. The object of the suit is to set aside, as fraudulent in fact, the judgment of De Montader, and as fraudulent in law, because suit was prematurely brought, the judgments of the other defendants—excepting only Howes & Co. and Goodwin & Co. The stock was sold, and by stipulation of the parties, the proceeds left in the Sheriff's hands to abide the final decree.

Among the creditors, made defendants, Moller & Co , Mark Sheldon & Co., Bragg, Rollinson & Co., and J. Paxson, attached on the 2d and 3d of December, while their debts were not due until the 4th of December.

De Montader having assigned his judgment to Moller & Co. and Goodwin & Co. left the State, and was not served with process.

Upon the case being called for trial it was agreed that the main issue of fraud in the De Montader judgment, be tried by the Court, and in the event of that judgment being set aside, that the other issues as to whether the suits of Moller & Co., Bragg, Rollinson & Co., Mark Sheldon & Co., and Paxson, were not prematurely brought, and therefore fraudulent as to the other creditors, be referred. Accordingly, after trial by the Court, the De Montader judgment was found void as to creditors, and after trial before a referee, the judgments of the defendants above named, were also found void, and then, a motion for new trial being overruled, a final decree was entered directing the Sheriff to pay the creditors in the following order, to wit: Howes & Co., plaintiffs, Goodwin & Co., and the rest in the order of their attachments. The fund, however, did not reach them, except a small sum to Moller & Co.

Goodwin & Co. as assignees of the judgment of De Montader, appeal from so much of the decree as sets it aside; and Bragg, Rollinson & Co. and Mark Sheldon & Co. appeal from .

so much of the decree as postpones them to Howes & Co., Goodwin & Co. and plaintiffs.

*J. P. Treadwell,* for Bragg, Rollinson & Co. and Mark Sheldon & Co. Appellants.

I.    The facts found by the referee, and on which the Court below proceeded, do not warrant the decree postponing the attachments of the defendants, Sheldon & Co. and Bragg, Rollinson & Co. to the subsequent attachments of the plaintiffs, and of the defendants, Goodwin & Co. and of Howes & Co.

Where goods are purchased on a credit, with the fraudulent intent never to pay for them, the seller, on discovering the fraud, may treat the credit, or whole special contract, as void, and maintain an action immediately, on an implied assumpsit, for the value of goods sold and delivered. (*De Symans* v. *Minchwich,* 1 Esp. 430; *Hogan* v. *Shee,* 2 Id. 522; *Camp* v. *Pulver,* 5 Barb. Sup. Ct. R. 92, 93; *Wilson* v. *Force,* 6 Johns. 109, 110; *Bromagim* v. *Throop,* 15 Id. 476; *Linningdale* v. *Livingston,* 10 Id. 36, 37; *Rickard* v. *Stanton,* 16 Wend. 26; *Whipple* v. *Dow,* 2 Mass. 418. As favoring this principle, see *Ruiz* v. *Norton,* 4 Cal. 358; *Johnson* v. *Totten,* 3 Cal. 343.)

The authority of these cases has not been uniformly followed to their full extent, and there are conflicting decisions. It is held by all the cases, however, that if the goods, so fraudulently purchased, have been sold by the vendee, which is the case here, an action for money had and received may be immediately brought and maintained.

The present suit seems to be grounded on this, that Sheldon & Co. and Bragg, Rollinson & Co. did not *count* right against Sandrie & Lange; that they should have *counted* in assumpsit for money had and received, not in assumpsit for the value of goods sold and delivered.

" It is well settled that a stranger cannot interfere upon the grounds of irregularity. When the contest is between creditors, all the equities are in favor of the most diligent. The subsequent execution or attachment creditors can claim no equitable relief. If the proceedings of the prior creditor are not void, but voidable, the defendant can alone object." (*Dixey* v. *Pollock,* 8 Cal. 573.)

This case is not within the rule laid down in *Taaffe* v. *Joseph-son,* (7 Cal. 355,) because there the defendant knew the debt he sued on was not due; and here the debt was fraudulently con-tracted, a fact not existing in that case.

But that case is not law.    The principle of *Dana* v. *Stanford,* (10 Cal. 277,) is against it.    So with the Practice Act author-izing confession of judgment on a debt not due.

II.    The plaintiffs now contend that they are entitled to be preferred to Sheldon & Co. and Bragg, Rollinson & Co. though the attachments of the latter were not fraudulent!

The priority of payment out of equitable assets sometimes, in some States, allowed the creditor first discovering them and filing a creditor's bill, is never extended to legal assets that may be reached by execution at law.

Such priority is never extended to oust, or have priority over, an existing prior lien at law—such as that of the prior attach-ments of Sheldon & Co. and Bragg, Rollinson & Co. on the same property, in this case.

Montader's judgment was "utterly void," at law, by the stat-ute against fraudulent conveyances.    The Sheriff might have so treated it, and have appropriated the proceeds of the property on the junior attachments of the Appellants, and then returned it *nulla bona.*    And then, to an action for a false return, the Sheriff might have pleaded the fraud and facts, as a defense.    (4 Wend. 111, and 5 T. R. there cited.)    Equitable assets are only such as cannot be reached without the interposition of a Court of Equity.

But the principle of a priority of payment contended for by plaintiffs, is not recognized at all, as a doctrine of general equity jurisprudence; nor a limitation on the rule that equality is equi-ty.    (1 Story Eq. Jur. Secs. 553, 554; 8 Cal. 157; 2 Paige, 568.)

*Harmon & Labatt,* for Appellant, Goodwin & Co. argued, that the finding of the Court below, that the De Montader judgment was fraudulent in fact, was against evidence.

*Hoge & Wilson,* for Plaintiffs.

1. Can a creditor bring an action for goods sold and delivered

before the term of credit, expressly agreed to, has expired, on the ground that the purchase from him was a fraudulent one?

I.   We maintain the negative of the first question on the following points and authorities:

The actions of the Appellants against Sandric & Lange, could not be maintained on the special contract made between the parties, for the term of credit had not expired.   They could not be maintained upon implied agreements, because no agreement is implied when there is an express one.   An action, therefore, for goods sold and delivered, could not be maintained at all. The fraud did not render the contract void, but only voidable, and that at the election of the vendor; but if he elected to avoid, it must be in toto.   He cannot affirm the sale in part and disaffirm it in part.   If disaffirmed in toto, then the goods became reinvested in the vendors, and they could bring trover or replevin. But they cannot set up the fraud to avoid the express contract of sale, and then waive the fraud and set up an implied contract of sale.   (*Ferguson* v. *Carrington,* 9 Barn. & Cress. 59; 17 Eng. C. L. R. 36, S. C. 14, E. C. L. 661; *Strutt* v. *Smith,* 1 Cromp. M. & R. Exch'r, 312; *Bradbury* v. *Anderton,* 1 Id. 490; Chit. on Con. 408; *Reed* v. *Hutchinson,* 3 Camp. 352; *Selway* v. *Fogg,* 5 Mee. & Wels. 86; *Saratoga & Schenectady R. R. Co.* v. *Row,* 24 Wend. 75; *Hogan* v. *Shorb,* 24 Id 460—461; same doctrine, *Thompson* v. *Bond,* 1 Camp. 4.)

*Galloway* v. *Holmes,* (1 Doug. Mich. 330,) is a late case, and contains a lengthy review of the whole subject and the authorities.   (*Mason* v. *Bovet,* 1 Denio, 74; Chit. on. Con. 680; *Allaire* v. *Whitney,* 1 Hill, 484; S. C. 4 Denio, 558; S. C. 1 Com. 311, 312.   See, also, *Linn* v. *O'Hara,* 2 E. D. Smith, 569; *Minturn* v. *Main,* 3 Seld. 227; *Lamerson* v. *Marvin,* 8 Barb. 18; *Gibson* v. *Moore,* 7 B. Monroe, 95; *Hardwick* v. *Forbes,* Adm. Bibb. 213; *Hunt* v. *Silk,* 5 East. 449; *Devendorf* v. *Beardsley,* 23 Barb. 661; *Mattewan* v. *Bentley,* 13 Id. 645; *Butler* v. *Hildreth,* 5 Met. 51; *Jennings* v. *Gage et al.* 13 Ill. 612; *Buchanan* v. *Harney,* 12 Id. 338; *Wheaton* v. *Baker,* 14 Barb. 594; Chitty on Con. 681, and cases cited.   *Lloyd* v. *Brewster,* 4 Paige, 537; *Butler* v. *Hildreth,* 5 Met. 51.   See *Fisher* v. *Tredenhall,* 21 Barb. 84; *Campbell* v. *Fleming,* 1 Adol. & El. 40.)   Where goods are obtained by *tort,* to

entitle the plaintiff to sue, *ex contractu*, the goods must be sold and turned into money and the action for money had and received must be brought. (*Jones* v. *Hoar*, 5 Pick. 285—290. See, also, *Rowley* v. *Bigelow*, 12 Id. 312 ; *Ayres* v. *Hewitt*, 19 Me. 283 ; *Minturn* v. *Main*, 3 Seld. 227.) " The party who claims rights resting upon a rescission (of a contract), must show facts establishing the rescission of the contract. (*Wheaton* v. *Baker*, 14 Barb. 597—601 ; *Green* v. *Russell*, 5 Hill, 183.)

Here, not a fact going to the election to rescind was proven by defendants. If the injured party " have a knowledge of the fraud, he will be presumed to acquiesce if he takes no steps, but sleeps on his rights." (*Edmunds* v. *Hildreth*, 16 Ill. 216 ; *Canal* v. *Potter*, 1 Walk. Mich. 13, 373 ; *Boyce Exrs.* v. *Grundy*, 3 Pet. 215 ; *Whitney* v. *Allaire*, 4 Denio, 559.)

The only cases to the contrary of the positions above taken seem to be *De Symons* v. *Minchwinch*, (1 Esp. N. P. 430) ; *Hogan* v. *Shee*, (2 Id. 522) ; *Wilson* v. *Force*, (6 Johns. 110,) and *Arnold* v. *Crane*, (8 Id. 81.) The earliest case is the one first quoted, and is the authority on which the two New York cases rest. *De Symons* v. *Minchwinch* is discussed in *Bradburg* v. *Anderton*, (1 Crom. Mee. & Rosc. 490,) and it is there said by Park, B. that " that case has been overruled, and the principle is well established, that where there is an express contract between two parties, the law will not imply another." In Chitty on Contracts, 408, Note (i), it is said : " *De Symons* v. *Minchwich*, (1 Esp. 430,) is no longer law." It was decided in 1795, and *Hogan* v. *Shee* in 1797 ; but the whole current of English authorities, ever since, is the other way, and Ferguson & Carrington, (9 Barn. &. Cres. 59,) is followed as settled law. *Arnold* v. *Crane*, (8 Johns. 81, 82,) is decided on the authority of *Wilson* v. *Force*, (6 Id. 110,) and the latter on the cases in Espinasse.

II. A subsequent attaching creditor can, by bill in chancery, have the attachments thus improperly brought set aside. (Drake on Attach. Ch. 39, p. 771 and cases cited ; *McClung* v. *Jackson*, 6 Grattan, 96 ; *Smith* v. *Gottinger*, 3 Geo. 140 ; *Brown* v. *Chancy*, 1 Id. 410, and cases cited ; Drake, 775 to end ; *Briggs* v. *French*, 2 Sum. 254 ; *White* v. *Williams*, 1 Paige, 502 ; *Chappel* v. *Chappel*, 2 Kern, 215 ; *Gates* v. *Johnson*, 3 Barr, 55 ; *Burns* v. *Morse*, 6

Paige, 109; *Griswold* v. *Stewart*, 4 Cow. 459; *Proctor* v. *Johnson*, 2 Salk, 600; *Ryan* v. *Daley*, 6 Cal. 238; *Burns* v. *Morse et al.* 6 Paige, 108; *Chappel* v. *Chappel*, 2 Kern. 215; *Taaffe* v. *Josephson*, 7 Cal. 355; *Alvarez* v. *Brannan*, Id. 503; *Swartz* v. *Hazlett*, 8 Id. 128, 129; and *Seligman* v. *Kalkman*, Id. 215.)

III. Respondents are entitled to priority, because by their diligence the property has been saved from the judgment of De Montader.

The Appellants say that they had a lien at law, and that the removal of the fraudulent judgment was not necessary to their protection; that De Montader's judgment "was utterly void at law," and that it might have been treated as such at law; that "equitable assets are only such as cannot be reached without the interposition of a Court of Equity." The counsel forgets, that other parties than De Montader and Sandrie & Lange had an interest in that judgment; that it had been assigned to Moller & Co. and to Goodwin & Co. who set it up as good and valid. Their rights could not be disposed of at law. (*Smith* v. *Wright*, 6 Black. 551; *Lawrence* v. *Lane*, 4 Gilman, 361.) Here then is a necessary resort to chancery to settle the whole question. The plaintiffs here first filed their bill, and having by their superior diligence saved the whole assets in dispute, they are, upon all principles of equity, entitled to priority of payment. (*Pierson et al.* v. *Robb et al.* 3 Scam. Ill. 143; *Baker* v. *Bartol*, 6 Cal. 486; *Page* v. *O'Neil*, 12 Id.)

BALDWIN, J. delivered the opinion of the Court—FIELD, J. and TERRY, C. J. concurring.

Bill filed to subject the proceeds of certain goods to the plaintiff's claim, he being an attaching and judgment creditor of defendants, Sandrie & Lange. One Montader, had procured attachment on a large debt claimed to be due from these last defendants. The bill charges that this debt was simulated; the referee and the Court below find that it was. There was a good deal of conflicting proof on the trial. The counsel for the representatives of this claim have made a very plausible and forcible argument, impeaching the propriety of the finding that the claim of Montader was fraudulent. But it is not our habit to

Patrick *v.* Montader.

review the evidence on questions of fact, and especially in cases of fraud, where the result depends upon various considerations, of greater or less force, to be found in the conduct, dealings, and relations, of the parties, and various circumstances, tending, with more or less directness, to prove or repel the ascription of fraud.

It is claimed by the plaintiff that the attachments of Sheldon & Co. and Bragg, Rollinson & Co. are fraudulent as against the plaintiff's attachment. The main ground of this charge is that these attachments issued upon accounts for goods which were due on the 4th of December, when the attachments issued two days before. The examination which we have given the authorities convinces us that an attachment is, at least, *prima facie*, void as against another attachment, when the first is issued before the maturity of the debt. The authorities collected in Drake on Attachment, 775, *et seq.* sustain the doctrine laid down by the author. The cases of *Pierce* v. *Jackson*, (6 Mass. 244); *Smith* v. *Gettinger*, (3 Kelly, 145); and *Walker* v. *Roberts*, (4 Richardson, 591,) especially, are in point; though the force of the last case is somewhat impaired by the fact that, in South Carolina, a judgment in attachment has only the effect of liquidating the debt and establishing the demand. The ground upon which the decision is placed is the fraud; or, as Chief Justice Parsons says, in the Massachusetts case : "The attempt is against law, and a fraud on the other creditors, for whom some remedy ought to be provided. If, therefore, the plaintiff, when he caused the attachment to be made on his writ, had no cause of action, he cannot claim the benefit of his attachment against a creditor having a good cause of action." *Felton* v. *Wadsworth*, (7 Cushing,) is still more emphatic. In that case the previous decisions of the Supreme Court of Massachusetts are reviewed. The Court say : "The actual fraud is the essential element in the case," and proceeding further, hold this language : "The case of *Pierce* v. *Partridge*, is expressly put upon the same principle as that upon which *Fairfield* v. *Baldwin* was decided. It appears, therefore, that it was not the intention of the Court to adopt any principle in *Pierce* v. *Partridge*, different from that involved in *Fairfield* v. *Baldwin*. Nor does it appear that in *Pierce* v. *Partridge* the Court intended to extend the principle of the

29

case of *Fairfield* v. *Baldwin;* but, on the contrary, the case of *Pierce* v. *Partridge* is expressly declared to be within the principle of the case of *Fairfield* v. *Baldwin.* Both these cases, therefore, were decided on the ground of fraud, and it is difficult to see on what other ground a party could be deprived of a just debt. The judgments in favor of the plaintiffs were declared invalid because they were fraudulent, and were made the means of defrauding others."

In the case of Cushing, the party took judgment on his attachment for too much. The Attorney did this by mistake. Within thirty days after the issuing of the execution he went to the defendant and offered to correct the error. It was held that this mistake did not avoid the debt or writ.

2 Kernan, 215, recognizes the same doctrine.

The case of *Taaffe* v. *Josephson,* (7 Cal. 355,) is directly opposed to the case in 7 Cushing, and, we think, to reason and the great weight of authority. The arbitrary presumptions which the Court draw from the facts in the case seem to us unauthorized, when applied to the question of fraud in fact. According to that case, if a man should happen to take a judgment for ten dollars too much on a claim for ten thousand dollars, it would be a conclusive proof of fraud and avoid the judgment.

If these claims, therefore, stood on this fact alone, unexplained, there would be no doubt that the plaintiffs could hold these attachments to be mere fraudulent obstructions to his right. But the referee finds, and so the proof seems to be, that there was fraud on the part of these debtor defendants in contracting these debts; that the defendants were insolvent, and bought the goods without any intention of paying for them; and many facts are offered to show this. It may be true, as argued by Respondent's counsel, that this fact gave the plaintiffs in those suits no legal cause of action until the maturity of the debt as fixed by the contract; that is, that no suit could be brought for the goods as on a contract of sale, except according to the terms of the contract. Many respectable authorities hold the contrary, though, probably, the weight of authority, and, certainly, a very strong technical reason, favors the proposition as the learned counsel states it. But there can be no doubt that, in morals and conscience, this money was due from the defendants to these plain-

Patrick *v.* Montader.

tiffs in attachment; there is neither showing nor presumption that the goods were not of the value for which they sold.   There is some proof in the record, too, that these goods had been sold by the defendants, and the money received, though this is not so found by the referee.   But that *this debt*, represented by the attachments and judgments, was equitably due at the time of the suing out of the attachment, we think clear.   It may be true that if the defendants had chosen to plead a technical rule of law, the action in its present form might have been defeated.   But we do not see what obligation rested on the defendants to make this plea, or how, if they did not choose to do so, third persons can complain.   There was no fraud in the plaintiffs trying to recover the money for goods of which they have been defrauded. Nor was there fraud in defendants suffering judgment to go when they justly owed the money.   If they had confessed judgment for this money, we suppose no man could have imputed fraud to them in the confession, unless it be held that it is fraudulent to pay a creditor whom the debtor has deceived and defrauded, the value of the property of which he has cheated him.

The objection of the plaintiffs here, then, would seem to be directed to the form of the action of these plaintiffs against the common debtors, rather than against the substance of their act. But, as we said before, the only valid cause of complaint of *these* plaintiffs against the attachment assailed is for the fraud, which may, to be sure, be shown *prima facie* to exist, when the note is prematurely sued on, but which, we apprehend, would be rebutted when it was shown that the debt was really presently due, in justice and equity.   We think it would be holding the rule with great rigor to decide that in such a case as this, where many of the most respectable authorities hold the suit properly brought, even according to the strictest rules, and when, in fact, *this sum* was due, at the time of the attachments, in conscience, and even, perhaps, at law—though recoverable in a different way, the plaintiffs below should lose their debts, because they have mistaken the particular form of remedy which they should have adopted.   Having obtained a lien for a just debt, a Court of Equity, when they have been summoned before it, when there is no proof of actual fraud, would, according to its known liberal course of procedure, permit them to hold it.   The plaintiffs here

asking equity must do it, and it is only upon the ground of actual fraud that chancery usually holds void the contracts or liens of creditors in favor of junior creditors or purchasers.

It is contended that the plaintiffs here, by virtue of their superior diligence, have gained priority over the claims of these Appellants. But, we think, the rule cannot be invoked in this case. These are not, strictly, equitable assets, discovered by these plaintiffs, and only to be reached in equity. The Appellants had a lien, by virtue of their levies, subordinate only to other prior liens. It was in the nature of a legal estate, vested in the Sheriff for their benefit. But a short time elapsed after their levy before the filing of this bill. They were not asked to go in with the plaintiffs to set aside this fraudulent attachment of Montader. They had shown nothing like abandonment of their right to subject these goods in priority to the plaintiffs. The plaintiffs have brought them into Court as parties to this proceeding. The effect of the bill is to marshal these assets and distribute them according to the rights of the several parties before the Court. The necessary parties and the necessary pleadings were made. We do not see why a final decree could not be rendered in equity, which delights in closing litigation, and abhors multiplicity of actions—settling all the rights and equities of the parties. The plaintiffs' reasonable costs, disbursements, and counsel fees, should be first deducted from the fund recovered, and the balance distributed as we have indicated.

The judgment will be reversed and remanded for a decree according to the principles of this opinion.

Ordered accordingly.