[No. 1,071.]

## JOSEPH MENDES, APPELLANT, v. FRANK FREITERS, DEFENDANT, AND HIRAM JOHNSON ET AL., INTER-VENORS AND RESPONDENTS.

ATTACHMENT UPON ACCOUNT STATED FOR GREATER AMOUNT THAN IS ACTUALLY DUE—WHEN NOT CONSTRUCTIVE FRAUD—SUBSEQUENT ATTACHING CREDITORS.—When a party acts in good faith, he is not guilty of constructive fraud in commencing an attachment suit upon a stated account for a greater sum than is actually due. His attachment to the extent of the amount actually due to him is valid against subsequent attaching creditors.

AMENDMENT OF COMPLAINT—BETWEEN PARTIES.—As between the plaintiff and the defendant, plaintiff had the right to amend his complaint by adding a count for goods sold and delivered, and money advanced by him to defendant, which included the same items that were embraced in the original complaint upon an "account stated."

MISTAKE IN ORIGINAL COMPLAINT—WHO CAN TAKE ADVANTAGE OF.—If the plaintiff made a mistake in declaring upon an "account stated" instead of for goods sold and delivered, etc., the defendant is the only one that could have taken advantage of the error.

AMENDMENT—EFFECT OF UPON ATTACHMENT—DEFENDANT.—Defendant could not demand a release of the property attached because of the amendment. As to him, plaintiff's lien was in force after as well as before the amendment.

IDEM—INTERVENORS.—An amendment changing the form of action merely, or adding a new count for the same, will not dissolve the attachment as to intervenors.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

The facts are stated in the opinion.

*C. J. Lansing* and *Bishop & Sabin,* for Appellant:

I. Admitting that the account as stated was for a greater sum than was actually due, parol evidence was admissible to show that the settlement was not made as a final settlement, and was not so considered by the parties at the time it was made, but was approximately correct, and was to be corrected when the true balance was determined.

II. Such an agreement is valid. There is neither actual nor constructive fraud in the transaction. By the terms of the contract, and under said accounting, the true balance due from defendant to plaintiff could be recovered from the defendant, but nothing more.

III. Upon the evidence and the facts in the case, every act of plaintiff was honest and legal, no act of his was fraudulent, nor can it be legally so construed. (*Travis* v. *Epstein,* 1 Nev. 117; *Batterman* v. *Pierce,* 3 Hill, 171.) The original complaint was sufficient to sustain the attachment.

IV. If the case had been tried without the amended complaint, the correct balance due plaintiff could have been proven, notwithstanding the amount fixed and named in the account stated.

V. The complaint being properly amended, the attachment was not rendered nugatory or ineffectual. The attachment was properly issued in the first instance, and is still valid. (*Hathaway* v. *Davis,* 33 Cal. 161.)

VI. The statement of the account in no way affected or impaired the original debt, so long as said statement or writing remained unpaid. (*Brewster* v. *Bours,* 8 Cal. 501; *Cole* v. *Sackett,* 1 Hill, 516.)

VII. The attachment lien of plaintiff could not be postponed to the liens of the intervenors, even if there was partial fraud on the part of the plaintiff. The most that could be done in this way would be to postpone the attachment lien of plaintiff for the amount found to have been fraud-

ulently claimed, after the payment of the true amount found to be due to the plaintiff from the defendant. (*Coghill & Co.* v. *Marks*, 29 Cal. 673; *Patrick* v. *Montader*, 13 Id. 434; *Gamble* v. *Voll*, 15 Id. 509.)

*Thomas Wren* and *Crittenden Thornton*, for Respondents:

I. The original complaint of plaintiff stated a cause of action which did not exist. There never was an account stated between the plaintiff and the defendant Freiters.

II. The amended complaint does not state facts sufficient to constitute a cause of action. The judgment rendered in favor of plaintiff against the defendant Freiters' falls for lack of support by a proper pleading. The intervenors can attack the judgment in this manner. If the plaintiff's judgment is erroneous, and ought to be reversed for error on direct attack, he has no standing in court to assail the judgment which postpones the lien of his attachment to those of the intervenors. If he ought not to have a judgment, he ought not to have a lien by attachment superior to those of the intervenors.

III. An account stated may be opened by either party upon proof of fraud or mistake seasonably discovered. (*Perkins* v. *Hart*, 11 Wheat. 256; *Lockwood* v. *Thorne*, 1 Ker. 170; *Toland* v. *Sprague*, 12 Pet. 300.)

IV. The second count unites an attempt to state a cause of action for goods furnished and delivered, with an attempt to state a cause of action for moneys advanced, paid out, and expended. Such a complaint is bad in substance. (*Buckingham* v. *Waters*, 14 Cal. 147; *Cordier* v. *Schoss*, 18 Id. 580; *Watson* v. *S. F. & H. B. R. R. Co.*, 41 Id. 19.)

V. An attachment upon a cause of action not yet due, or for a sum greater than that actually due, is void against subsequent attaching creditors. (The authorities cited are referred to in the opinion of the court.)

VI. A lien by attachment is good or bad as a whole. It is either wholly good or entirely bad. (*Fairfield* v. *Baldwin*, 12 Pick. 397; *Pierce* v. *Partridge*, 3 Metc. 44; *Wilder* v. *Fondey*, 4 Wend. 104; *Kendall* v. *Lawrence*, 22 Pick. 545.) The point for which we contend has for a century been the

settled doctrine as applicable to contracts of every class within other sections of the statute of frauds. (*Lord Lexington* v. *Clark*, 2 Vent. 223; *Chater* v. *Bickett*, 7 T. R. 201; *Crawford* v. *Morrell*, 8 Johns. 253; *Sherrill* v. *Crosby*, 14 Id. 358; *Movan* v. *Hays*, 1 Johns. Ch. 339; *Botsford* v. *Burr*, 2 Id. 405; *Steere* v. *Steere*, 5 Id. 1; *Fuller* v. *Reed*, 38 Cal. 99.)

VII. No right of action accrues to an accommodation-maker, or indorser, or guarantor, or surety against his principal, until payment in fact of their common obligation. (*Chilton* v. *Whiffin*, 3 Wils. 13; *Goddard* v. *Vanderheyden*, Id. 262; *Young* v. *Hockcliffe*, Id. 346; *Taylor* v. *Higgins*, 3 East, 269; *Maxwell* v. *Jameson*, 2 B. & A. 51; *Tom* v. *Goodrich*, 2 Johns. 213; *Powell* v. *Smith*, 8 Id. 249; *Cumming* v. *Hackley*, Id. 202; *Hoyt* v. *Wilkinson*, 10 Pick. 33; *Morrison* v. *Berkeley*, 7 S. & R. 238; *Miller* v. *Howry*, 2 P. & W. 380; *Hodges* v. *Armstrong*, 2 Dev. 253.)

VIII. The attachment of the plaintiff for the amounts not due was unquestionably voidable by the intervenors as subsequent attaching creditors. The inference of fraud in such a case is not a mere presumption, disputable and inconclusive, but a legal conclusion, incapable of refutation. (*Wilcombe* v. *Dodge*, 3 Cal. 260; *McFarland* v. *Pico*, 8 Id. 626; *Pierce* v. *Jackson*, 6 Mass. 242; *Swift* v. *Crocker*, 21 Pick. 241; *Smith* v. *Gettinger*, 3 Ga. 140; *Hale* v. *Chandler*, 3 Gibbs, 531.)

By the Court, LEONARD, C. J.:

This appeal is from a judgment in favor of the intervenors above named, whereby it was ordered and adjudged that, the lien of plaintiff's attachment upon certain personal property be postponed to the liens of the intervenor's attachment, and that the sheriff should sell said property, and out of the proceeds of such sale pay, first, the judgments of the intervenors against defendant in the order in which they were issued; and, second, out of the surplus, if any, satisfy plaintiff's judgment in whole or part. Plaintiff's attachment was prior in time, and his judgment was for seven thousand nine hundred and fifteen dollars and ninety-

seven cents. The aggregate of intervenors' judgments was three thousand five hundred and eighty-eight dollars and forty-nine cents. The value of the property attached is insufficient to satisfy plaintiff's judgment. The defendant is insolvent, and has no other property out of which the several judgments can be satisfied.

In his original complaint plaintiff declared upon an account stated between him and defendant on the eighth day of August, 1879, and alleged that upon such statement, a balance of ten thousand one hundred and one dollars and ninety-four cents was found due to him from defendant, no portion of which sum had been paid, and asked judgment for that amount. Subsequently defendant filed a demurrer to the complaint, which he afterwards withdrew, and his default was duly entered; but in the meantime the petitions of intervenors had been filed and served. Thereafter, with permission of the court, and without objection on the part of intervenors, plaintiff filed an amended complaint upon an account stated between him and defendant, on said eighth day of August, but alleged that both he and the defendant made a mistake and error as to the amount really due from the latter to him, and that the amount due on said date was seven thousand nine hundred and fifteen dollars and ninety-seven cents, instead of ten thousand one hundred and one dollars and ninety-four cents. And "for further cause of action" he alleged that, "on the eighth day of August, 1879, defendant was, and now is, indebted to plaintiff in the sum of seven thousand nine hundred and fifteen dollars and ninety-seven cents, upon a balance due for goods furnished and delivered, and for moneys advanced, paid out and expended, for defendant, at his special instance and request, between January, 1871, and the eighth day of August, 1879.

The petitions of intervention charged that plaintiff's action was brought, and his attachment issued, to hinder, delay, and defraud the creditors of defendant, by collusion between plaintiff and defendant. Intervenor Colerick also alleged, upon information and belief, that when the action was commenced defendant was not indebted to plaintiff in

any sum; and intervenor Johnson in the same manner alleged that, defendant was not indebted to plaintiff in the sum of ten thousand one hundred and one dollars and ninety-four cents; that, if he was indebted in any sum, it was for several thousand dollars less than that amount, and that he did not know and had no means of knowing or ascertaining the exact amount due, if anything. Plaintiff answered, denying all charges of fraud stated by the intervenors, and made allegations similar to those set out in the amended complaint, as to the amount due to him, and as to the error and mistake in stating that amount, and in commencing the action for a larger sum than was actually due. It will be seen that one of the issues raised between plaintiff and the intervenors was as to the amount actually due to the former from the defendant, and another was upon the alleged fraud. Plaintiff was permitted, without objection on the part of intervenors, to introduce evidence to sustain his allegations in the amended complaint as to the amount actually due, and to repel the charges of fraud. Among other facts, the court found that there was no collusion between plaintiff and defendant, and that plaintiff did not intend to either hinder, delay, or defraud the other creditors of defendant, but that on the evening previous to commencing his action plaintiff demanded an acknowledgment from defendant of the latter's indebtedness, which was given in writing for the sum of ten thousand one hundred and one dollars and ninety-four cents, with the understanding that if said amount was not due, the acknowledgment should be corrected so as to conform to the truth; that when plaintiff took the acknowledgment he did not know exactly how much was due, but did know it was not as much as the sum acknowledged, and that he took it with margin enough in his favor to cover all that defendant owed him, and all that he (plaintiff) had become defendant's surety for; that plaintiff knew at the time he commenced his action for ten thousand one hundred and one dollars and ninety-four cents, that defendant did not owe him that amount, either directly or indirectly, on account of indorsements or otherwise.

As to the execution of the acknowledgment, plaintiff tes-

tified, in substance, that defendant signed it; that they guessed at the amount due; that they did not examine the books; that it was given and received with the understanding that, if there was a mistake, it should be corrected.

As conclusions of law, the court found, 1. That plaintiff was guilty of constructive fraud in taking an acknowledgment for a sum greater than was actually due; 2. That there never was an accounting; 3. That in commencing his action upon an account stated, plaintiff commenced upon a cause of action that did not exist, and that the attachment issued upon said cause of action was invalid and void as to subsequent attaching creditors; and, 4. That plaintiff was entitled to judgment against defendant for the sum of seven thousand nine hundred and fifteen dollars and ninety-seven cents, the amount claimed in the amended complaint. The amount of this judgment was made up of the following items, viz.:

*a.* There was due to plaintiff, on direct account, five thousand three hundred and sixty-one dollars and eighty-five cents.

*b.* A note executed for defendant's benefit, upon which plaintiff was joint maker, for one thousand dollars. This note was due when the action was commenced, and according to plaintiff's testimony, it was paid by him before the commencement of the action.

*c.* A note for six hundred dollars, of like character, not due when the action was commenced, nor when the amended complaint was filed. Plaintiff testified that he paid this note the next day after the attachment.

*d.* An account against defendant in favor of Dunkel & Co., for which plaintiff was responsible. There is no evidence that this bill has ever been paid.

We deem it unnecessary to decide whether or not the evidence supported an action upon an account stated. The question is, Did the court err in postponing the attachment lien of plaintiff to those of intervenors, and in awarding to the latter priority of payment to the extent of their judgments?

There was a large amount of money actually due to plaintiff, and this action was commenced to recover it, even though

the action was for a larger sum. A cause of action was well stated in the original complaint, whether in fact it existed or not. It was a cause of action upon which an attachment could be had, and the court acquired jurisdiction of the whole subject-matter.

It may be admitted that the pleader first mistook his form of action, but, as between the original parties, it can not be doubted that, upon leave granted, plaintiff had the right to amend as to form merely, by declaring upon the original demand only; or that he could amend by adding a new count upon that demand, setting forth the subject-matter of the original debt, especially where, as in this case, it is apparent upon the face of the amended complaint, that the demand stated in each count is in fact the same. (*Vibband* v. *Roderick*, 51 Barb. 627; *Tierman's Ex.* v. *Woodruff*, 5 McLean, 136.)

The amendment having been rightfully made, it relates back to the commencement of the action, and makes the complaint as if it had been originally drawn as amended. (*Dana* v. *McClure*, 39 Vt. 201; *Ward* v. *Kalbfleish*, 21 How. Pr. 285.)

Again, if the pleader made a mistake in declaring upon an account stated in the original complaint, we are of the opinion that the defendant alone could have taken advantage of the error. (*Moresi* v. *Swift*, 15 Nev. 220; *Patrick* v. *Montader*, 13 Cal. 443.)

In *Ball* v. *Claflin*, 5 Pick. 306, the court said: "But it is said that on the *indebitatus assumpsit*, as for goods sold, the plaintiff could not have prevailed, so that a second attachment would come in. We do not understand that it is the right of third parties, either creditors or bail, to avail themselves of a mere defect in the form of declaring. If it were so, no amendment could be allowed, and the rule would be nugatory. It is to cure defects of form that the statute and the rule were made, and where the plaintiff has the right to the value or the price of goods which have come to the hands of defendant in such a manner as that he is accountable on implied or express contract for the value or the price, the form of the action is wholly unimportant to third

persons, although they may eventually be interested in the suit. There is but one contract, one cause of action, one single matter of the suit. The plaintiff has mistaken the manner of declaring for it. This is the very case where, by virtue of the statute, he is entitled to amend."

It is plain that defendant could not have demanded a release of the property attached because of the amendment, and consequently that, as to him, plaintiff's lien was in force after as well as before the amendment.

The effect of the amendment upon intervenors remains to be considered, and upon this question a fair result of all the authorities is that, an amendment changing the form of the action merely, or substituting or adding a new count for the same, will not dissolve an attachment. (*Laighton* v. *Lord*, 29 N. H. 257; *Austin* v. *Town of Burlington*, 34 Vt. 512; *Hill* v. *Smith*, Id. 541; *Wright* v. *Brownell*, 3 Vt. 440; *Ball* v. *Claflin*, 5 Pick. 304; *Wood* v. *Denny*, 7 Gray, 541; *Seeley* v. *Brown*, 14 Pick. 177; *Page* v. *Jewett*, 46 N. H. 443; *Miller* v. *Clark*, 8 Pick. 413.)

But was plaintiff, under the circumstances shown, guilty of constructive fraud in commencing his action for more than was due? We quote from the court's opinion: "The commencement of the action in the first place for more than thirty-five per cent. more than was due, with knowledge of an excess, in my opinion, amounted to *constructive fraud*, however innocent, or rather, as I think, thoughtless, the act may have been."

The court also held that, "a mistake in seeking to recover more than plaintiff was legally entitled to was no excuse." In considering this question we must keep constantly in mind the fact that, plaintiff was not guilty of *actual* fraud, for so the court found. In other words, he did not intend to recover more than was legally his own. He did not, in fact, intend to hinder, delay, or defraud any other creditor. We must remember, too, that penalties and forfeitures are visited upon fraud and wrongdoing. We freely concede that, if plaintiff had commenced his action for a sum in excess of the amount that he knew was due, with the intention of obtaining judgment for such sum, and satisfying it

out of defendant's property, thus defrauding other creditors, the attachment would have been void *in toto*, and ought to have been postponed to those of intervenors. Counsel for respondent say: "The rule is that an attachment upon a cause of action not yet due, or for a greater sum than is actually due, is void as against subsequent attaching creditors," and *Taaffe* v. *Josephson*, 7 Cal. 352; *McKenty* v. *Gladwin*, 10 Id. 227; *Scales* v. *Scott*, 13 Id. 76; *Wilcoxson* v. *Burton*, 27 Id. 228; *Fairfield* v. *Baldwin*, 12 Pick. 388; and *Pierce* v. *Partridge*, 3 Metc. 44, are relied on in support of the doctrine stated. The first case has been overruled. (See *Patrick* v. *Montader*, 13 Cal. 442, and *Gamble* v. *Voll*, 15 Id. 510, where it is held that "*the mere fact* that the judgment is taken for too much is not itself conclusive proof of fraud.")

As to each case cited wherein the sum sued for was greater than the amount actually due, unless *McKenty* v. *Gladwin* and *Scales* v. *Scott* are exceptions, judgment was knowingly taken for the full amount, after the true indebtedness was ascertained; while in this case, judgment was rendered for no more than the court found was due.

In *Wilcoxson* v. *Burton*, the court found that, the actual indebtedness was nine thousand and odd dollars less than the amount for which the note mentioned in the confession of judgment was given, and that said excess was included in the note for the purpose of defrauding creditors. And the court said: "These facts being given, the judgment is unquestionably void, citing *McKenty* v. *Gladwin* and *Scales* v. *Scott*.

In *Tully* v. *Harloe*, 35 Cal. 308, the court referred to the different California cases above cited, and said: "They merely established the doctrine that, a note or mortgage given for a greater sum than is due, is void in any event, so far as the excess is concerned, and *in toto* unless satisfactorily explained."

In *McKenty* v. *Gladwin*, upon the authority of which the court below particularly relied in rendering the judgment appealed from, the intervenors claimed, and so the court held, that the note in suit was void as to creditors of

the defendant, because a part of its consideration was fraud-
ulent. It was executed on the fifteenth or sixteenth of
June, 1857, but antedated to the fourth of June, and by its
terms drew interest from date, at the rate of two per cent.
per month until paid. The entire consideration for which
it was given was composed of eight distinct items, three of
which, amounting to twelve thousand dollars, were due
July 3, 1857, and the other five were due June 19, 1857,
and no portion of those items were drawing interest. The
plaintiff testified that he had no other motive for antedat-
ing the note than that he should receive interest for the ten
days. Upon those facts the court held that, the note itself
was entirely void as to creditors, under the statute of frauds,
which makes every bond or other evidence of indebted-
ness, given with the intent to hinder, delay, or defraud
creditors, void; evidently upon the familiar doctrine that if
a part of an entire contract is void under the statute, it is
void *in toto*, and the further doctrine that every man is pre-
sumed to know the necessary consequences of his act; and
if an act necessarily hinders, delays, or defrauds creditors,
then the law presumes it is done with a fraudulent intent.

Upon the same principles was *Scales* v. *Scott* decided.
Independent of the question of fraud, the court could not
have intended, in McKenty's case, to declare the law to be,
"that if there was no consideration for a part of the prin-
cipal sum for which the note was given, the whole note
would be void." (Story on Prom. Notes, sec. 187; *Ayres* v.
*Husted*, 15 Conn. 511.) It is evident the court proceeded
upon the theory that, the plaintiff *knowingly intended* to ac-
complish what the law in terms forbade, although he did
not know that he could not, legally, take a note bearing in-
terest in substitution for debts that bore none. But in
this case, the acknowledgment was given and received with
the distinct understanding that all errors should be cor-
rected, and this fact eliminates from the case the element
of fraudulent intent in taking it, or of intending to do a
forbidden thing, either knowingly or ignorantly. Here, a
strict adherence to the entire understanding could defraud
no one. There, the result of an enforcement of the con-

tract, according to its terms, must have been to defraud other creditors.

And in the absence of collusion between plaintiff and defendant, the former had good reason to expect, when he commenced his action, that the latter would set up the facts in his answer, and thereby necessitate a fulfillment of the entire agreement, as to correction, or enable him, voluntarily, to do so. Suppose, with the same agreement, without knowing the sum actually due, plaintiff had taken a note for ten thousand dollars, and had brought his action thereon. Would the bringing of such action have been constructive fraud? We think not. *Cushing* v. *Gore*, 15 Mass. 72, was just such a case. There plaintiff had indorsed sundry notes for the defendants. He took Grafton, one of the defendants, to his counting-room to adjust the accounts between them, and to get security for whatever might be due to him. He took from Grafton a note for three thousand dollars, to enable him, by attachment or otherwise, to indemnify himself as indorser, it being understood that he was to take up and discharge the notes indorsed by him as they should become due, and to hold the note then given, as good only for the amount of the others which he should so take up. The amount of the notes so indorsed by plaintiff was not then ascertained; and therefore the new note was given for a sum supposed to be fully sufficient to meet the others. It turned out that plaintiff had indorsed notes amounting to one thousand seven hundred and forty-seven dollars and eighteen cents, which sum, with interest, he claimed on the note in suit.

The court instructed the jury that, "an agreement by the plaintiff to take up and discharge, at his own expense, the notes so indorsed by him when due, was a sufficiently legal consideration for the note in suit, to the extent for which he was liable as indorser, and that it was not necessary that such agreement should have been in writing."

Subsequent to plaintiff's attachment other creditors attached the same goods, upon demands which fell due before either of the notes indorsed by plaintiff became due, and defendants contended that this operated as a fraud upon

other creditors. On this point the judge instructed the jury that the defendants, when they were unable to pay all their debts, might give a preference to any one creditor by paying or giving him security; and that, as they might do this by assigning to plaintiff any of their goods, so they might do it by giving a note, to anticipate the day of payment, and so enable him to attach their goods. The instructions were sustained by the supreme court. We quote from the opinion: "We think when an indorser has, either expressly or impliedly, undertaken to pay the note by him indorsed, there can be no question that such undertaking is a good and valuable consideration for a promissory note. The case finds that, it was understood between Grafton and the plaintiff, that the latter was to pay the notes he had indorsed. There was no direct evidence of this, but the jury have inferred the fact, and they had a lawful right to do so. It might be inferred, we think, from the mere fact of a note having been given with a view to cover those indorsements; and had the plaintiff failed to pay the notes as they became due, so that the defendants had been troubled or put to expense, we see no reason to doubt that they might have maintained an action against them upon an implied promise. * * * Nothing is more common than for debtors, on the eve of failing, to assign property for the security of indorsers * * * and others who are thought to be entitled to favor. Such assignments are held valid here; nor is it an objection that the value of the property assigned exceeds the sum for which the assignee is liable, unless the transaction should appear to be fraudulent. * * * He (plaintiff) has recovered for no more than the amount of the notes indorsed by him, and which he has actually paid. If he had recovered more he might have been charged as trustee for the surplus; or, perhaps, if he had taken judgment knowingly for more than was thus due to him, and had levied his execution for the amount, this might have been evidence of collusion which might avoid his judgment in favor of other creditors." We think the mere bringing of suit upon an account stated for more than is actually due is no more evidence of fraud, actual or constructive, than is the

commencement of an action upon a promissory note when a portion of the consideration has failed, or when there was, in the beginning, a partial want of consideration. We are unable to find a case that holds an attachment void, in the absence of actual fraud, because the action was brought for more than was due, but judgment was taken for no more than the true amount.

There are cases like *Pierce* v. *Jackson*, 6 Mass. 244, where the plaintiff had *no cause of action* when the suit was commenced, which hold that an attempt to thus gain preference is a fraud upon other creditors; and like *Hale* v. *Chandler*, 3 Mich. 532, where plaintiff brought suit upon a note not due, as well as upon an account which was due, for the purpose of making the amount claimed sufficient to give the court jurisdiction, which arrive at the same conclusion. Undoubtedly a plaintiff must have a present cause of action before he can attach. But it would be a startling doctrine to hold, that he must decide at his peril just the amount that the law will give him upon a disputed claim. Neither *Fairfield* v. *Baldwin* nor *Pierce* v. *Partridge, supra,* supports the position of respondents' counsel.

As to the first, says the court in *Felton* v. *Wadsworth,* 7 Cush. 589: "That was a case where a judgment was knowingly, deliberately, intentionally, and fraudulently obtained for more than was due, for the purpose of preventing the honest creditors from obtaining their debts out of the effects of their debtor. This fraudulent purpose was followed up by taking out execution and applying the goods or moneys of the debtor to pay this fraudulent execution. * * * The *actual* fraud is the essential element in the case. * * * Nor does it appear that in *Pierce* v. *Partridge* the court intended to extend the principle of the case of *Fairfield* v. *Baldwin,* but, on the contrary, the case of *Pierce* v. *Partridge* is expressly declared to be within the principle of the case of *Fairfield* v. *Baldwin.* Both of these cases, therefore, were decided on the ground of fraud, and it is difficult to see on what other ground a party could be deprived of a just debt."

The whole opinion is instructive in this connection, and in our judgment enunciates the true doctrine.

But·it is said by counsel for respondent that a lien by attachment is either good or bad as a whole, while for appellant, it is urged, that his attachment was valid, at least to the amount actually due from defendant to him. We think, in the absence of actual fraud, that appellant's claim is sustained by reason and authority. None of the cases cited by respondent upon this point are opposed to this conclusion, while those in its favor are numerous.

In *Coghill* v. *Marks*, 29 Cal. 677, defendant having failed to answer, plaintiff took judgment for nine hundred and eleven dollars and sixty-four cents. Under the issue taken on intervention, the court found that as to four hundred and sixty-five dollars and eighty-five cents, parcel thereof, the action had been prematurely brought. There was no actual fraud in that particular. Upon those facts the supreme court said: "But the court, instead of reducing the prior lien of the plaintiff to the amount which was due at the date of the attachment, postponed it altogether to the subsequent lien of the intervenor, directing the judgment of the latter to be first paid out of the proceeds of the property, which was erroneous." (See also *Patrick* v. *Montader, Tully* v. *Harloe,* and *Felton* v. *Wadsworth, supra.*)

*Ayres* v. *Husted*, 15 Conn. 510, was a contest between attaching creditors of one Crissey. Husted's judgment was rendered upon a note executed by Crissey for one thousand one hundred and twenty-five dollars. The note was given for the purpose of enabling Husted to secure himself by attachment for certain indebtedness due from Crissey and for the indorsement of a note on behalf of Crissey, which was not due. There was no express agreement by Husted to pay the note, or to indemnify Crissey against it. The arrangement between them was made without fraudulent intent.

Said the court: "We think that the judgment is clearly valid, so far as it respects the amount of such indebtedness. The consideration of the judgment is divisible, and that part of it which consists of the debt is easily capable of

ascertainment. The parties to the note are exonerated from any fraudulent intent in the arrangement which led to its execution. That part of the consideration which consists of such debt is sound; and we see no reason why, for that, the note should not be sustained. There is no principle on which a note, the consideration of which consists of claims, some of which are valid and others are invalid, can be held, in the absence of fraud, to be wholly void."

And in *Sanford* v. *Wheeler*, 13 Conn. 165, the same court held that a mortgage executed by the maker to secure an unconditional note, payable on demand, made up of a debt due from the mortgagor, and also of a liability of the mortgagee, as surety, was valid as against the creditors of the latter, for the amount of the debt, although it was set aside for the remainder. (And see *Weeden* v. *Hawes*, 10 Conn. 50; *North* v. *Belden*, 13 Id. 382.)

In *Sanford* v. *Wheeler*, it is said: "The superior court has found that there was no actual fraud in this transaction. The consideration of this note is very distinctly divisible; in part, and to an ascertained amount, it consists of a *bona fide* debt, and in part of mere liabilities. The present applicant appeals to a court of equity against this mortgage. He must come, then, as one disposed to do that justice to his adversary which he demands from him, and this he can not do while he seeks to deprive him of a security for an honest debt; and this court, in the exercise of equitable powers, can give aid to no such attempt. If the facts found in the present case are only such as have a probable tendency to deceive or mislead, without the *malo animo* necessary to constitute actual fraud, they may constitute what is sometimes termed constructive fraud; and then, a court of equity will, if it be practicable, give effect to the security, so far as to permit it to stand in favor of such part, intended to be secured by it, as is unaffected by fraud or other legal infirmity."

Our opinion is, that the court erred in postponing the whole of plaintiff's lien to the liens of intervenors, and in ordering the proceeds of a sale of the property attached accordingly. For the amount actually due to plaintiff, he

ought, in the absence of actual fraud, to receive the preference which the law gives to the first attaching creditor who acts in good faith. Whether or not his lien should have been postponed as to any amount for which he was liable as surety, and which had not been paid, we shall not decide, because it has not been fully discussed; and a decision upon it is not necessary upon this appeal.

In addition to the authorities cited by counsel for respondents, the following may be consulted: *Ayres* v. *Husted*, 15 Conn. 512; *North* v. *Belden*, 13 Id. 376; *Sanford* v. *Wheeler*, Id. 167; *Cushing* v. *Gore*, 15 Mass. 72; *Swift* v. *Crocker*, 21 Pick. 243; *Little* v. *Little*, 13 Id. 426; *Baird* v. *Williams*, 19 Id. 384.

The judgment and order appealed from are reversed.